# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 22-CV-495** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RUDY'S PERFORMANCE PARTS, INC.** | ) | |
| **D/B/A Rudy's, Rudy's Diesel,** | ) | |
| **Rudy's Diesel Performance, and** | ) | |
| **Rudy's Diesel Performance and Offroad** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **AARON RUDOLF** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## I. NATURE OF THE CASE

1. This is a civil action brought under Sections 203, 204, and 205 of the Clean Air Act ("CAA"), 42 U.S.C. §§ 7522–24, seeking injunctive relief and the assessment of civil penalties against Rudy's Performance Parts, Inc. ("Rudy's Performance Parts or Rudy's") d/b/a Rudy's, Rudy's Diesel, Rudy's Diesel Performance, and Rudy's Diesel

United States v. Rudy's et al. Complaint                                    Page 1.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 1 of 53

Performance and Offroad and Aaron Rudolf (collectively "Defendants") for violations of the CAA related to Defendants' manufacture, sale and offer to sell, and installation of aftermarket products that bypass, defeat, or render inoperative emission controls installed on motor vehicles or motor vehicle engines in violation of the CAA.

2.      As alleged in this Complaint, Defendants have put the public health at risk by selling more than 250,000 devices that defeat emissions controls on motor vehicles in violation of the CAA, the equivalent of adding over one million vehicles to the nation's roads.

3.      Defendants have also directly installed defeat devices on certified motor vehicles, an act known as "tampering." Indeed, Rudy's own website professed to the public that Rudy's was "a full service shop" that had "installed nearly every part [they] sell."

4.      Disabling emissions controls from vehicles presents a serious threat to human health. Such emissions are linked to premature death and cause heart and lung disease, heart attacks, and aggravated asthma, among other serious illnesses. To prevent this threat, the CAA imposes stringent standards for the emission of air pollutants from vehicles and prohibits the manufacture, sale, and installation of any device intended to disable vehicle controls designed to comply with those emissions standards. 42 U.S.C. §§ 7521(a), 7522(a).

5.      Rudy's illegal activity is compounded by its refusal to provide the Government basic information about the manufacture, sale, and use of its products, also in violation of the CAA.

United States v. Rudy's et al. Complaint                                      Page 2.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 2 of 53

## II.    JURISDICTION

6.      This Court has jurisdiction over the subject matter of and the parties to this action pursuant to Sections 204 and 205 of the CAA, 42 U.S.C. §§ 7523 and 7524, and 28 U.S.C. §§ 1331 (Federal Question), 1345 (United States as Plaintiff), and 1355 (Fine, Penalty, or Forfeiture).

7.      Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(c)(2), and 1395(a), as well as Sections 204 and 205 of the CAA, 42 U.S.C. §§ 7523 and 7524, because it is the judicial district in which the Defendants are located, reside, have been doing business, or in which a substantial part of the alleged violations in the Complaint occurred.

## III.    DEFENDANTS

8.      Rudy's Performance Parts, Inc. is a closely held North Carolina corporation with its principal office at 7422 Whitsett Park Road, Burlington, North Carolina. Rudy's Performance Parts, Inc. has done business under the following names:  Rudy's, Rudy's Diesel, Rudy's Diesel Performance, and Rudy's Diesel Performance and Offroad.

9.      Aaron Rudolf is, and has been at all relevant times herein, the President and Chief Executive Officer of Rudy's Performance Parts, Inc.

10.     Aaron Rudolf resides in Burlington, North Carolina, and does business in this judicial district.

11.     Aaron Rudolf is, and has been at all relevant times herein, the sole shareholder of Rudy's Performance Parts, Inc.

United States v. Rudy's et al. Complaint                                    Page 3.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 3 of 53

12.     Each Defendant is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## IV.     BACKGROUND

13.     This action arises under Title II of the CAA, as amended, 42 U.S.C. §§ 7521–90, and the regulations promulgated thereunder relating to the control of emissions of air pollution from motor vehicles and motor vehicle engines.

### A.     Statutory and Regulatory Overview

14.     In creating the CAA, Congress found that "the increasing use of motor vehicles . . . has resulted in mounting dangers to the public health and welfare." 42 U.S.C. § 7401(a)(2).  Congress's purposes in creating the CAA were "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," and "to initiate and accelerate a national research and development program to achieve the prevention and control of air pollution."  42 U.S.C. § 7401(b)(1)-(2).

15.     "Motor vehicle" is defined in the CAA as "any self-propelled vehicle designed for transporting persons or property on a street or highway." 42 U.S.C. § 7550(2); 40 C.F.R. § 85.1703.

16.     Title II of the CAA and the regulations promulgated thereunder establish standards for the emissions of air pollutants from motor vehicles and motor vehicle engines that "cause, or contribute to, air pollution which may reasonably be anticipated to endanger public health or welfare."  42 U.S.C. § 7521(a).  These pollutants include nitrogen oxides

("NO$_x$"), particulate matter ("PM"), non-methane hydrocarbons ("NMHCs"), and carbon monoxide ("CO").  42 U.S.C. § 7521(a)(3)(A).

17.    EPA has also established National Ambient Air Quality Standards for certain pollutants, including ozone, NO$_x$, PM, and CO.  *See* 40 C.F.R. §§ 50.1-50.19.

18.    Ozone (ground level) is a highly reactive gas that is formed in the atmosphere from emissions of other pollutants, including emissions from motor vehicles.

19.    PM is a form of air pollution composed of microscopic solids and liquids suspended in air.  PM is emitted directly from motor vehicles and is also formed in the atmosphere from other pollutants, including pollutants emitted from motor vehicles.

20.    NO$_x$ and NMHCs are reactive gases that contribute to the formation of ozone and PM.

21.    Exposure to ozone and PM is linked to respiratory and cardiovascular health problems as well as premature death.  Children, older adults, people who are active outdoors (including outdoor workers), and people with heart or lung disease are particularly at risk for health effects related to ozone or PM exposure.

22.    CO is a toxic gas that forms when the carbon in fuel does not burn completely.  CO is harmful to human health because it reduces oxygen delivery to the body's organs and tissues.  CO can cause headaches, dizziness, vomiting, nausea, loss of consciousness, and death.  Long-term exposure to CO has been associated with an increased risk of heart disease.

## B.     EPA's Certificate of Conformity Program for New Motor Vehicles and Motor Vehicle Engines

23.     Manufacturers of new motor vehicles or motor vehicle engines must apply for and obtain a certificate of conformity ("COC") from EPA to sell, offer to sell, or introduce or deliver for introduction into commerce any new motor vehicle or motor vehicle engine in the United States.  42 U.S.C. § 7522(a)(1).

24.     To obtain a COC, the original equipment manufacturer ("OEM") must demonstrate that the motor vehicle or motor vehicle engine will conform to established emissions standards for $NO_x$, PM, NMHCs, and CO, and other pollutants during the motor vehicle or motor vehicle engine's useful life.   42 U.S.C. § 7525(a)(2); *see* 40 C.F.R. §§ 86.007-30(a)(1)(i), 86.1848-01(a)(1).

25.     The COC application must include a description of the motor vehicle's emission control system and fuel system components.   40 C.F.R. §§ 86.094-21(b)(1), 86.1844-01(d)–(e).

26.     Once issued by EPA, a COC covers only those new motor vehicles or motor vehicle engines that conform in all material respects to the specifications provided to EPA in the COC application for such vehicles or engines.  40 C.F.R. § 86.1848-01(c)(6).

## C.     Acts Prohibited by Section 203 of the Clean Air Act

27.     Section 203(a)(3)(A) of the CAA, 42 U.S.C. § 7522(a)(3)(A), states that the following acts are prohibited:

> "for any person to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with the regulations [promulgated under Title II of the

CAA] prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser."

28. Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), states that the following acts are prohibited:

"for any person to manufacture or sell, offer to sell, or install any part or component intended for use with, or as a part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations [promulgated under Title II of the CAA], and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use."

29. Section 203(a) also prohibits any person from causing a violation of Section 203(a)(3)(A) or (B). 42 U.S.C. § 7522(a).

30. Any person violating Section 203(a)(3)(A) or (B) of the CAA, 42 U.S.C. § 7522(a)(3)(A) or (B), or causing a violation thereof, is subject to injunctive relief and civil penalties of up to $3,750 for each violation occurring on or after January 13, 2009, through November 2, 2015, and up to $5,179 for each violation occurring after November 2, 2015, and assessed on or after January 12, 2022, in accordance with Section 205(a) of the CAA, 42 U.S.C. § 7524(a) as modified by 40 C.F.R. § 19.4 (2022).

31. Each part or component manufactured, sold, offered for sale, or installed in violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), is a separate violation of Section 203(a)(3)(B), 42 U.S.C. § 7522(a)(3)(B). 42 U.S.C. § 7524(a).

United States v. Rudy's et al. Complaint                                                                 Page 7.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 7 of 53

32.     Section 204 of the CAA, 42 U.S.C. § 7523, provides that "district courts of the United States shall have jurisdiction to restrain violations" of Section 203(a).

**D.     EPA's Information Gathering Authority Under the Clean Air Act**

33.     Section 208(a) of the CAA, 42 U.S.C. § 7542(a), requires persons subject to Title II, Part A to maintain records and to provide information that EPA may reasonably require to determine whether the person has acted or is acting in compliance with the mobile source provisions of the CAA.

34.     Under Section 203(a)(2)(A) of the CAA, 42 U.S.C. § 7522(a)(2)(A), it is a prohibited act for any person to fail to provide information required under Section 208 or cause someone to fail to provide such information.

35.     Any person violating Section 203(a)(2)(A) of the CAA, 42 U.S.C. § 7522(a)(2)(A), is subject to civil penalties of up to $51,796 per day for each violation occurring after November 2, 2015, and assessed on or after January 12, 2022.  42 U.S.C. §§ 7524(a), 7525(a), as modified by 40 C.F.R. § 19.4 (2022).

**E.     Emissions-Related Elements of Design**

36.     An "element of design" is "any control system (i.e., computer software, electronic control system, emission control system, computer logic), and/or control system calibrations, and/or the results of systems interaction, and/or hardware items on a motor vehicle or motor vehicle engine."   40 C.F.R. §§ 86.094-2 and 86.1803-01 (General Compliance Provisions for Control of Air Pollution from New and In-Use Light-Duty Vehicles, Light-Duty Trucks, and Heavy-Duty Vehicles).

United States v. Rudy's et al. Complaint                                    Page 8.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 8 of 53

37.     An "emission control system" is a "unique group of emission control devices, auxiliary emission control devices, engine modifications and strategies, and other elements of design designated by the Administrator [of EPA] used to control exhaust emissions of a vehicle." 40 C.F.R. § 86.1803-01.

38.     OEMs install a variety of software and hardware elements of design and emission control systems in motor vehicles and motor vehicle engines to monitor and control emissions of pollutants in order to comply with the CAA and the regulations promulgated thereunder and to obtain a COC. These elements of design and emission control systems are hereinafter referred to in this Complaint as "Emissions-Related Elements of Design."

39.     Emissions-Related Elements of Design generally include both the specific hardware described in Paragraphs 41-45 below and the software that controls operation of that hardware.

40.     Motor vehicles are equipped with "Electronic Control Units" or "ECUs" (a/k/a an "engine control module" or "ECM"), which are on-board computer systems that run software that monitors and controls vehicle operations, including the operation of Emissions-Related Elements of Design.

41.     Motor vehicles are also equipped with auxiliary software and hardware emission control devices ("AECDs") which are Emissions-Related Elements of Design that sense temperature, motor speed, engine RPM, transmission gear, or any other parameter

for the purpose of activating, modulating, delaying, or deactivating the operation of any part of a motor vehicle's emission control system. 40 C.F.R. § 1037.801.

42. _Exhaust Gas Recirculation System._ Diesel engines produce high combustion temperatures that result in the production of $NO_x$. An Exhaust Gas Recirculation ("EGR") System reduces $NO_x$ emissions by recirculating a portion of engine exhaust gas back through the engine's cylinders, thereby lowering combustion temperature and reducing $NO_x$ formation. The EGR System includes but is not limited to the EGR cooler, throttle valve, other valves, piping, flanges, and gaskets, as well as various other hardware, parts, sensors, subassemblies, AECDs, ECU software (calibrations), and other components that collectively constitute the system for implementing this emissions control strategy. The EGR System is a "device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522 (a)(3)(B), and is also an "Emissions-Related Element of Design."

43. _Aftertreatment Systems._ As an alternative or in addition to EGRs, OEMs typically equip motor vehicles with one or more Aftertreatment Systems "whose design function is to reduce emissions in the engine exhaust before it is exhausted to the environment." _See_ 40 C.F.R. § 1068.30. A motor vehicle's Aftertreatment System consists of hardware installed in the stock exhaust system, as well as software that runs on one or more ECUs and directs operation of the hardware components. Diesel Particulate Filters ("DPFs"), Diesel Oxidation Catalysts ("DOCs"), Selective Catalytic Reduction

United States v. Rudy's et al. Complaint                                    Page 10.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 10 of 53

("SCR") Systems, and NO$_x$ Adsorption Catalysts ("NACs") are components of the Aftertreatment System that OEMs employ to control the emission of pollutants.

a.    Diesel Particulate Filters ("DPFs").    A DPF is a filter that captures soot from engine exhaust, thereby decreasing PM emissions.  By design, soot that collects in the DPF is periodically burned off by elevated exhaust temperatures in a process referred to as active or passive regeneration.  The DPF includes all hardware, parts, sensors, subassemblies, AECDs, ECU software (calibrations), and other components that collectively constitute the system for implementing this emissions control strategy.  The DPF is a "device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), and is also an Emissions-Related Element of Design.

b.    Diesel Oxidation Catalysts ("DOCs").    A DOC (a type of "catalytic converter" or "catalyst") is a precious-metal coated, flow-through honeycomb structure. As exhaust gas passes through the DOC, the coating of precious metal causes a catalytic reaction that breaks down CO and NMHCs in the exhaust into their less harmful components.  The DOC includes all hardware, parts, sensors, subassemblies, AECDs, ECU software (calibrations), and other components that collectively constitute the system for implementing this emissions control strategy.  The DOC is a "device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA]

regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), and is also an Emissions-Related Element of Design.

        c.     <u>Selective Catalytic Reduction ("SCR") Systems.</u>  A SCR system (a type of "catalytic converter" or "catalyst") reduces NO$_x$ emissions by chemically converting exhaust gas that contains NO$_x$ into nitrogen and water through the injection of diesel exhaust fluid, typically composed of urea.  The SCR includes all hardware, parts, sensors, subassemblies, AECDs, ECU software (calibrations), and other components that collectively constitute the system for implementing this emissions control strategy.  The SCR is a "device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), and is also an Emissions-Related Element of Design.

        d.     <u>NO$_x$ Adsorption Catalysts ("NACs").</u>  A NAC (a type of "catalytic converter" or "catalyst" a/k/a "NO$_x$ trap") reduces NO$_x$ emissions by chemically adsorbing NO$_x$ from exhaust gas.  The NAC includes all hardware, parts, sensors, subassemblies, AECDs, ECU software (calibrations), and other components that collectively constitute the system for implementing this emissions control strategy.  The NAC is a "device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), and is also an Emissions-Related Element of Design.

44. <u>On Board Diagnostics System</u>. The CAA requires OEMs to install an On-Board Diagnostics System ("OBD") on motor vehicles. 42 U.S.C. § 7521(m). The OBD monitors, detects, reports, and records malfunctions of monitored Emissions-Related Elements of Design and other components through the controller area network installed throughout the motor vehicle or motor vehicle engine. 40 C.F.R. §§ 86.007-17, 86.010-18, 86.1806-05. The OBD System monitors sensor inputs for malfunction or deterioration that could cause a vehicle to fail to comply with CAA emissions standards and may command the ECU to alter vehicle operation so that malfunctions can be corrected. The OBD System includes hardware, parts, sensors, subassemblies, AECDs, ECU software (calibrations), and other components that collectively constitute the system. The OBD System is a "device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), and is also an Emissions-Related Element of Design.

a. CAA regulations require that when the OBD System detects a malfunction of an emissions-related system or component, it must illuminate the vehicle's malfunction indicator light ("MIL" a/k/a "check engine light") on the dashboard. *See* 40 C.F.R. § 86.1806-05(b)-(d).

b. CAA regulations require that once the MIL has been illuminated, the OBD must record a diagnostic trouble code ("DTC"). 40 C.F.R. § 86-1806-05(e). The OBD stores DTCs that service personnel can read in order to diagnose and repair a vehicle

and government inspectors can download to verify a vehicle's compliance with emissions standards.

c.      The OBD may also prompt a driver to correct a problem by altering vehicle performance, such as by putting the vehicle into "limp-home mode." *See* 40 C.F.R. § 86.010-2.   In limp-home mode, the ECU commands the engine to downgrade performance so that the driver is aware that there is a problem with the emission control system, while permitting the vehicle to be driven (albeit slowly) to a service station.  *See, e.g.,* 40 C.F.R. § 86.004-25(b)(6)(ii) (requiring the vehicle performance to deteriorate to a point unacceptable for typical driving when DEF replenishment is required).

45.      Certified Stock Calibrations.   OEMs install a suite of pre-set software calibrations for operational parameters ("Certified Stock Calibrations").  These calibrations control all aspects of vehicle and engine operation including combustion, performance, and operation of EGR and Aftertreatment Systems.  The Certified Stock Calibrations for a particular engine operate together to minimize and/or control the formation and emission of pollutants and ensure the motor vehicle or motor vehicle engine can meet applicable emissions requirements in the CAA and regulations promulgated thereunder.  These calibrations are disclosed in the COC for each vehicle model because the Certified Stock Calibrations are an important part of a motor vehicle's overall emissions control strategy. *See* 40 C.F.R. § 86.1844-01(e)(2) (requiring that fuel pump flow rate, fuel pressure, engine speed, EGR exhaust gas flow rate, and basic engine timing be included in the COC application).  Each Certified Stock Calibration is an "element of design installed on or in a

motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), and is also an Emissions-Related Element of Design. The types of Certified Stock Calibrations relevant to this Complaint include but are not limited to:

  a.  calibrations for parameters that affect the operation of the EGR System including EGR flowrate and EGR cooler bypassing;

  b.  calibrations for parameters that affect the operation of the Aftertreatment System (the DPF, DOC, SCR, and/or NAC);

  c.  calibrations for parameters that affect engine combustion, performance, and operation, including air-fuel ratio, fuel injection timing, fuel quantity, fuel injection pulse width, fuel injection pressure, fuel injection mass, multiple injection patterns, open loop/closed loop functionality and control, ignition control (spark timing), boost pressure, limiters (fuel, torque, smoke, etc.), manifold pressure, camshaft timing, electronic throttle control, engine air flow characteristics, mass air flow rate, turbocharger/supercharger air flow, and other parameters disclosed on the COC which are elements of the OEM's strategy to control the formation of pollutants in the engine; and

  d.  calibrations for parameters that affect OBD detection, warning, and recording of malfunctions.

### F. Types of Aftermarket Defeat Devices at Issue in this Case

46. Third parties, including Defendants, manufacture and sell products designed to change motor vehicles' performance (typically seeking gains in horsepower or fuel

United States v. Rudy's et al. Complaint            Page 15.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 15 of 53

economy) by bypassing, defeating, or rendering inoperative OEM-installed Emission-Related Elements of Design ("Aftermarket Defeat Devices").

47.     Some Aftermarket Defeat Devices are physically installed in vehicles to change, remove, or replace emissions controls.

48.     Other Aftermarket Defeat Devices are software products that are electronically installed using devices that plug into a vehicle's OBD port to reprogram the computer systems.

49.     Aftermarket Defeat Devices "bypass, defeat, or render inoperative" Emissions-Related Elements of Design within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).   The Aftermarket Defeat Devices relevant to this Complaint fall into the following three categories: EGR Delete Hardware Products, Aftertreatment Delete Hardware Products, and Tuning Products.

50.     <u>EGR Delete Hardware Products.</u>   Some aftermarket hardware products physically replace, modify, bypass, render inoperative, facilitate deletion or partial deletion of, and/or interfere with, components of the EGR System.  These include but are not limited to exhaust manifolds that do not incorporate EGR ports designed for an engine with exhaust manifolds that contain EGR ports, plates that block the EGR system (known as "blocker plates"), and hardware to force the throttle valve to remain fully open, which inhibits EGR flow (referred to as "throttle valve delete" equipment).  These products are collectively referred to in this Complaint as "EGR Delete Hardware Products."

51.    Aftertreatment System Delete Hardware Products.    Some aftermarket hardware products physically alter some or all components of a motor vehicle's Aftertreatment System by replacing, modifying, bypassing, rendering inoperative, facilitating deletion or partial deletion of, or interfering with essential physical elements of the DPF, DOC, SCR, or NAC.  This often involves removing the Aftertreatment System installed by the OEM and replacing it with a "straight pipe" or "race pipe."    The replacement hardware does not contain emission controls such as DPF, SCR, DOC, and NAC.  These products are collectively referred to in this Complaint as "Aftertreatment System Delete Hardware Products."

52.    Tunes.  Other aftermarket products consist of software that is uploaded into a motor vehicle's ECUs and replaces, modifies, bypasses, renders inoperative, facilitates deletion or partial deletion of, overwrites, and/or interferes with one or more of a motor vehicle's or motor vehicle engine's Certified Stock Calibrations.  An individual piece of such software is commonly referred to as a "Tune," derived from its intended purpose of "tuning" the vehicle's performance.  The Tunes relevant to this Complaint are referred to hereinafter as "Delete Tunes."

a.    There are various methods by which Delete Tunes may be programmed into the vehicle.  Tunes may be uploaded from a handheld device called a "tuner," or from a smartphone or laptop to which they are uploaded by email, or through cloud-based technology.

United States v. Rudy's et al. Complaint                                                Page 17.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 17 of 53

b.     A single Delete Tune can alter, disable, bypass, delete and/or over-write multiple Certified Stock Calibrations and types of Certified Stock Calibrations.  For example, a tune that disables the EGR also typically changes OBD-related calibrations so that the EGR deletion will not be detected.  Multiple Tunes and types of Tunes are often sold together as a single product.

c.     The Delete Tunes relevant to this Complaint delete, modify, or overwrite the following types of Certified Stock Calibrations:

i.     *Certified Stock Calibrations relating to the EGR System*.  For example, this type of Delete Tune may electronically disable the EGR System or alter EGR-related Certified Stock Calibrations such as EGR exhaust gas flow rate.

ii.     *Certified Stock Calibrations relating to Aftertreatment Systems: the DPF, DOC, SCR, or NAC*.  For example, this type of Delete Tune may alter urea injection calibrations or DPF regeneration intervals.

iii.     *Certified Stock Calibrations relating to engine combustion, performance and operation.*    For example, this type of Delete Tune may alter, bypass, delete, and/or over-write the Certified Stock Calibrations for combustion parameters that affect emissions such as air-fuel ratio, fuel injection timing, fuel quantity, fuel injection pressure, and fuel injection pulse width.

iv.     *Certified Stock Calibrations relating to OBD functions.*  For example, this type of Delete Tune may prevent the generation and recording of DTCs and may prevent the OBD from putting the vehicle into "limp-home mode" due to changes in

Certified Stock Calibrations or removal of or changes to the EGR System or Aftertreatment System.

### V.    **GENERAL ALLEGATIONS**

53.    At all relevant times herein, Defendants manufactured, sold, and/or offered to sell products intended for use in "motor vehicles" as that term is defined by the CAA, 42 U.S.C. § 7550(2), and regulations promulgated thereunder at 40 C.F.R. § 85.1703.

54.    At all relevant times herein, Defendants manufactured, sold and/or offered to sell, or caused the manufacture, selling, or offering to sell of the following types of Aftermarket Defeat Devices:  EGR Delete Hardware Products, Aftertreatment Hardware Products, and Delete Tunes (collectively, "Subject Products").

55.    Defendants represented that the Subject Products they manufactured, sold, and/or offered to sell enhance a motor vehicle's power or performance, modify a motor vehicle's fuel economy, or reduce the costs associated with maintaining a motor vehicle's emission control system.

56.    At all relevant times herein, Defendants sold and/or offered to sell, and/or caused the manufacture, selling, or offering to sell Subject Products over the internet through their website and other online marketplaces such as Amazon and eBay.

57.    At all relevant times herein, Defendants also sold Subject Products to other retailers that then market the products to consumers.

58.    In some cases, Defendants combined different Subject Products together in a package, for example by selling Aftertreatment System Delete Hardware Products that

United States v. Rudy's et al. Complaint                                   Page 19.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 19 of 53

physically remove system components with Delete Tunes that electronically disable Aftertreatment System operations as a single product (e.g., delete kits), or by selling multiple Delete Tunes together as a single product.

59. At all relevant times herein, EGR Delete Hardware Products, Aftertreatment Hardware Products, and Delete Tunes that Defendants manufactured, sold, and/or offered to sell, or that Defendants caused to be manufactured, sold, or offered for sale, had a principal effect of bypassing, defeating, and/or rendering inoperative Emission-Related Elements of Design.

60. At all relevant times herein, Defendant Aaron Rudolf participated in, and/or caused, the manufacture, sale, and/or offer to sell EGR Delete Hardware Products, Aftertreatment System Delete Hardware Products, and/or Delete Tunes.

61. For example, Aaron Rudolf directly communicated with customers, vendors, and employees concerning the sales of Subject Products.

62. Aaron Rudolf also sent customers instructions for Subject Products that explained how to remove EGR and Aftertreatment Systems.

63. Some Subject Products listed on Amazon identified "Aaron Rudolf" as the seller without reference to Rudy's Performance Parts.

64. At one time, Aaron Rudolf's personal Facebook page had a link to Rudy's DPF Delete Kits.

65. Aaron Rudolf even discussed in writing how to describe Subject Products without using the term "delete" in order to avoid EPA attention.

United States v. Rudy's et al. Complaint                                    Page 20.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 20 of 53

66.     Defendant Rudy's Performance Parts' Facility, located at 7422 Whitsett Park Road, includes a garage at which in 2014 and 2015, and possibly thereafter, Defendant Rudy's Performance Parts installed EGR Delete Hardware Products, Aftertreatment System Delete Hardware Products, and/or Delete Tunes on motor vehicles and/or motor vehicle engines.

67.     Rudy's Performance Parts' installation of Aftertreatment System Delete Hardware Products and/or Delete Tunes on motor vehicles and/or motor vehicle engines as alleged in Paragraph 66 above removed or rendered inoperative devices and/or elements of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under the CAA after such sale and delivery to the ultimate purchaser and Defendants knew that such installations would have this effect.

68.     Aaron Rudolf participated in and/or caused the removal or rendering inoperative of devices or elements of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under the CAA after such sale and delivery to the ultimate purchaser, and he knew that such installations would have this effect.

69.     As President and sole owner of Rudy's, Aaron Rudolf had ultimate decision making authority regarding the products Rudy's manufactured, sold, and offered to sell, and was in a position to prevent repeated violations of the CAA, but he failed to do so.

70.     At all relevant times herein, Aaron Rudolf was a responsible corporate officer of Rudy's for the CAA violations alleged in this Complaint.

United States v. Rudy's et al. Complaint                                                    Page 21.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 21 of 53

## REQUESTS FOR INFORMATION

71.     On December 7, 2016, EPA issued a request for information to Defendant Rudy's Performance Parts and Aaron Rudolf under Section 208(a) of the CAA, 42 U.S.C. § 7542(a), requesting information about each product that Defendants manufactured or sold after January 1, 2014, that "replaces, modifies, bypasses, allows for deletion or partial deletion, or affects" various Emissions-Related Elements of Design ("First Request for Information").

72.     Defendant Rudy's Performance Parts provided some, but incomplete, information to EPA in several installments between January 6, 2017, and July 19, 2017. Table 1 attached hereto indicates how the information Defendant Rudy's Performance Parts, Inc. provided to each request was late, incomplete, or deficient.

73.     On October 1, 2018, EPA issued a second request for information to Rudy's Performance Parts and Aaron Rudolf under Section 208(a) of the CAA, 42 U.S.C. § 7542(a), requesting information about each product that Rudy's Performance Parts, Rudy's Performance Diesel and parents, subsidiaries, predecessors, successors and affiliates of these companies manufactured or sold after January 1, 2014, that "replaces, modifies, bypasses, allows for deletion or partial deletion, or affects" various Emissions-Related Elements of Design ("Second Request for Information").

74.     Some but not all of the Second Requests for Information asked for the same information requested on December 7, 2016 because it had still not been provided.

United States v. Rudy's et al. Complaint                                    Page 22.

75. EPA granted Defendant Rudy's Performance Parts extensions of the due date for certain information requests.

76. Defendant Rudy's Performance Parts admitted that it had not established and/or maintained records sought by EPA in the information request and provided some, but incomplete, information to EPA in several installments by the revised due dates between November 8, 2018, and January 31, 2019. Table 2 attached hereto indicates how the information Defendant Rudy's Performance Parts provided in response to each request was late, incomplete or deficient.

**FIRST CLAIM FOR RELIEF**

***Manufacture, Sale and/or Offer to Sell EGR Delete Hardware Products in Violation of the CAA***

77. The United States re-alleges Paragraphs 1 through 76 above as if fully set forth herein.

78. From January 1, 2014, through March 31, 2019, Defendants manufactured, sold and/or offered to sell, and/or caused the manufacture, sale and/or offer to sell, hundreds of different types of EGR Delete Hardware Products (hereinafter "Defendants' EGR Delete Hardware Products").

79. Defendants' EGR Delete Hardware Products include but are not limited to blocker plates, EGR cooler delete kits, throttle valve delete kits, and pipes.

80. From at least July of 2014, through July of 2016, Defendants' website displayed product categories called "EGR Delete Kits."

United States v. Rudy's et al. Complaint                                              Page 23.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 23 of 53

81.     As of March of 2019, Defendants' eBay seller page included a product category called "EGR Delete Kits."

82.     The product names for certain of Defendants' EGR Delete Hardware Products contain the word "delete" or "block" or "blocker."

83.     For example, some of the EGR Delete Hardware Products were listed on Defendants' website or eBay seller page under the following product names: "Rudy's EGR/Cooler Delete Kit" (Product No. #64 EDE-Blocker), "Rudy's EGR and Throttle Valve Delete" (Product No. DP0256_DP0029-BLUE), "LMM EGR Block Off Plate" (Product No. LLM-BP), "LLM EGR Cooler Delete Kit" (Product No. RDPLLMEGR), and "TDI EGR and Cooler Delete Kit Racepipe Block Off Gasket" (Product No. DP0090), and "PPF EGR Blocker Plate Kit" (Product No. DP0059).

84.     Defendants' descriptions of certain of Defendants' EGR Delete Hardware Products indicate that these products replace, facilitate deletion or partial deletion of, and/or interfere with the EGR System.

85.     For example, Defendants' website and/or eBay seller page has described certain of Defendants' EGR Delete Hardware Products using the following statements.

- "Allows Removal of EGR Cooler From The Truck" (Product No. RDP60-EGRD and DP0032).

- "Installing the EGR Blocker Plate prevents hot exhaust gases from recirculating through your engine" (Product No. XD152).

- "Completely Replaces EGR System . . . Note: Requires the use of a tuner that will allow you to disable the egr system" (Product Nos. RDP-EGRD-LLY and RCD-LLYEGR).

United States v. Rudy's et al. Complaint                                                    Page 24.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 24 of 53

- "This EGR Kit Is Designed To Remove The EGR Assembly From Your 2011-2015 6.7L Powerstroke. This Will Remove The EGR Cooler, Manifold Pipes, Coolant Lines, And All EGR Related Electronics From Your Truck" (Product No. DP0035/36).

- "Simply Blocks EGR Flow, No Components to Remove . . . installation of the XDP Block Plate will cause EGR related DTC trouble codes. Aftermarket tuning is required." (Product No. XD154).

86.    The product manuals and/or installation instructions for certain of Defendants' EGR Delete Hardware Products contain instructions on how to remove and replace all or part of the EGR System.

87.    Some of the product descriptions for certain of Defendants' EGR Delete Hardware Products state that the product must be used with tuning that disables the EGR System.

88.    A motor vehicle's EGR System is "a device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).

89.    Each of Defendants' EGR Delete Hardware Products is, and at all relevant times herein was, intended for use with certified motor vehicles and motor vehicle engines covered by EPA-issued certificates of conformity, including Powerstroke engines in Ford vehicles, Duramax engines in GM vehicles, and Cummins engines in Dodge vehicles.

90.    A principal effect of each of Defendants' EGR Delete Hardware Products is, and at all relevant times herein was, to bypass, defeat, or render inoperative a motor vehicle's EGR System.

United States v. Rudy's et al. Complaint                                                          Page 25.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 25 of 53

91.     Defendants knew or should have known that each of Defendants' EGR Delete Hardware Products was being offered for sale or installed for such use or put to such use.

92.     Each unit of Defendants' EGR Delete Hardware Products that Defendants manufactured, sold, and/or offered to sell, or that Defendants caused to be manufactured, sold, or offered to sell, is a separate violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).  42 U.S.C. § 7524(a).

93.     Defendants' violations as alleged in this Count resulted in excess emissions from motor vehicles of various air pollutants.

94.     For each violation of Section 203(a)(3)(B), Defendants are each liable to the United States for injunctive relief and civil penalties of up to the amounts set forth in Paragraph 30 above.

## SECOND CLAIM FOR RELIEF
### *Manufacture, Sale, and/or Offer to Sell*
### *Aftertreatment System Delete Hardware Products in Violation of the CAA*

95.     The United States re-alleges Paragraphs 1 through 76 above as if fully set forth herein.

96.     From January 1, 2014, through March 31, 2019, Defendants manufactured, sold, and/or offered to sell, and/or caused the manufacture, sale, or offer to sell over 500 different types of Aftertreatment System Delete Hardware Products that bypass, defeat, and/or render inoperable one or more Aftertreatment Systems (hereinafter "Defendants' Aftertreatment System Delete Hardware Products").

United States v. Rudy's et al. Complaint                                             Page 26.

97.     Defendants' Aftertreatment System Delete Hardware Products include but are not limited to pipes commonly called "race pipes," "delete pipes," and/or "straight pipes" because they do not have a bulge in the pipe for an Aftertreatment System.

98.     From at least July of 2014, through November of 2016, Defendants' website displayed product categories called "DPF Delete Kits" or "DPF Delete Packages."

99.     The product names for certain of Defendants' Aftertreatment System Delete Hardware Products contain the word "delete."

100.    For example, some of Defendants' Aftertreatment System Delete Hardware Products were listed on Defendants' website or eBay seller page under the following product names:  "DPF Delete Pipe" (Product No. RDP-DPF), "DPF/Cat/Urea Delete Kit-No Bungs" (Product No. 57-857NB), "DPF/DOC/DEF Delete Pipe" (Product No. 77-DPF), "Diamond Eye 4" DPF CAT UREA Delete Pipe" (Product No. 125113), "Flo Pro DPF and Cat Delete No Bungs" (Product No. 837NB), and "4 Aluminized DPF/CAT Delete Pipes" (Product No. DP0124).

101.    Defendants' descriptions of certain of Defendants' Aftertreatment System Delete Hardware Products indicate that these products replace and/or facilitate deletion or partial deletion of the Aftertreatment Systems.

102.    For example, Defendants' website has described certain of Defendants' Aftertreatment Delete Hardware Products as follows:

- "eliminates the use of the restrictive catalytic converter for maximum performance . . . ." (Defendants' website description of Product No. 49-44028 July 24, 2016);

United States v. Rudy's et al. Complaint                                    Page 27.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 27 of 53

- "eliminates the use of the restrictive diesel particulate filter (DPF) for maximum performance . . . . This system requires the use of a controller with a DPF-delete function" (Defendants' website description of Product No. 49-44027 July 24, 2016); and

- "deletes the DPF Filter" (Defendant's website description of Product No. FP-18233 August 13, 2016).

103.    The product manuals and/or installation instructions for certain of Defendants' Aftertreatment System Delete Hardware Products contain instructions on how to remove and replace all or part of the OEM's Aftertreatment System.

104.    Defendants' product manuals and/or descriptions for certain of Defendants' Aftertreatment System Delete Hardware Products state that the products must be used with delete tuning.

105.    A motor vehicle's Aftertreatment System including DPF, SCR, NAC, and DOC, is "a device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).

106.    Defendants' Aftertreatment System Delete Hardware Products are replacements for OEM-installed stock exhaust pipes which contain Emissions-related Elements of Design such as DPFs, DOCs, SCR Systems, and/or NACs.

107.    Each of Defendants' Aftertreatment System Delete Hardware Products is, and at all relevant times herein was, intended for use with certified motor vehicles and motor vehicle engines, including Powerstroke engines in Ford vehicles, Duramax engines in GM vehicles, and Cummins engines in Dodge vehicles.

108. A principal effect of each of Defendants' Aftertreatment System Delete Hardware Products is, and at all relevant times herein was, to bypass, defeat, or render inoperative a motor vehicle's Aftertreatment System.

109. Defendants knew or should have known that each of Defendants' Aftertreatment System Delete Hardware Products was being offered for sale or installed for such use or put to such use.

110. Each unit of each of Defendants' Aftertreatment System Delete Hardware Products is a separate violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).  42 U.S.C. § 7524(a).

111. Defendants' violations as alleged in this Count resulted in excess emissions from motor vehicles of various air pollutants.

112. For each violation of Section 203(a)(3)(B), Defendants are each liable to the United States for injunctive relief and civil penalties of up to the amounts set forth in Paragraph 30 above.

## THIRD CLAIM FOR RELIEF
### *Manufacture, Sale and/or Offer to Sell Delete Tunes in Violation of the CAA*

113. The United States re-alleges Paragraphs 1 through 76 above as if fully set forth herein.

114. From January 1, 2014, through March 31, 2019, Defendants manufactured, sold and/or offered to sell, and/or caused the manufacture, sale and/or offer to sell over 100 different types of Delete Tunes (hereinafter "Defendants' Delete Tunes").

United States v. Rudy's et al. Complaint      Page 29.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 29 of 53

115.    Some of Defendants' Delete Tunes altered or overwrote multiple Certified Stock Calibrations.

116.    In some cases, more than one of Defendants' Delete Tunes were sold together as a single product.

117.    Defendants' Delete Tunes bypass, defeat, and/or render inoperative one or more of the following types of Certified Stock Calibrations:

    a.    Certified Stock Calibrations relating to the EGR System, as well as signals or records related to the EGR System;

    b.    Certified Stock Calibrations relating to the Aftertreatment System, including the DPF, DOC, SCR, or NAC, as well as signals or records related to these components;

    c.    Certified Stock Calibrations related to engine combustion, performance, and operation such as air-fuel ratio, fuel injection timing, fuel quantity, fuel injection pressure, and fuel injection pulse width; and

    d.    Certified Stock Calibrations related to OBD functions in order to prevent the generation of diagnostic trouble codes, prevent the malfunction indicator light from illuminating, and/or prevent the OBD from putting the vehicle into "limp-home mode" due to changes in Certified Stock Calibrations or removal of the EGR System or Aftertreatment System.

118.    Defendants' product names for certain of Defendants' Delete Tunes includes the term "delete" such as "DPF delete programmer" and "delete tuner."

United States v. Rudy's et al. Complaint                                    Page 30.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 30 of 53

119.   For example, as of March 2019, Defendant's website listed for sale the following Delete Tune products:  "Gear Box Z DPF-R DPF EGR Delete Programmer" (Product No. GBZ-FD40), "GDP EFI Live DPF Delete Tuner DSP5 AutoCal" (Product No. R110DGP_DSP5LBZLMM), "PPEI EZ LYNK 2.0 DPF EGR Delete Tuner DSP5 Monitor 11-16 6.6 LML" (Product No. PPEIEZLYNKLML), "Patriot nGauge DPF EGR Delete Programmer" (Product No. Pat-nGauge), and  "OZ Tuner EFI Live Tuner DSP4 EGR Delete 2016 Colorado" (Product No. OZ-AC-E98-LWN-SE_OZ-COL-EGR-KIT_OZ-SW-DSP4-E98).

120.   Defendants' descriptions of certain of Defendants' Delete Tunes indicate that these products replace, modify, bypass, render inoperative, facilitate deletion or partial deletion of, over-write, and/or interfere with operation of the EGR System, Aftertreatment System, Certified Stock Calibrations and the OBD System.

121.   For example, Defendants' website or eBay seller page have described certain of the Delete Tunes Defendants offer to sell using the following statements.

- "Allows removal of the DPF system and all related sensors . . . Allows removal of the entire EGR system including cooler with no trouble codes . . . Turn[s] off [the] EGR system without removing ANY parts" (Minimax Tuner, Product No. 109003).

- "Allows removal of the Diesel Particulate Filter (DPF)…Turns OFF & disables EGR system…No trouble codes or check engine lights" (Product No. PPEI-ECODIESEL).

- "[T]urns off EGR system . . . Late injection events (post inj) disabled for best economy . . . Customizable injection timings for more economy and/or power"" (Product No. RACEMEPRO).

United States v. Rudy's et al. Complaint                                                   Page 31.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 31 of 53

- "Allows removal of the DPF system and ALL related sensors . . . . Allows removal of the entire EGR system including cooler with no trouble codes . . . Turns off EGR system without removing ANY parts" (XRT PRO Product No. 109005/6).

- "Disables Entire EGR By Turning Off Without Removing Any Parts (Hard Part Removal Recommended And Supports Removal Of Entire EGR System Including Valve And Cooler With No Trouble Codes . . . Disables The DPF/DEF System And ALL Related Sensors . . . .End User Customizable Injection Timing" (Product No. RACEMEULTRA).

- "DOC/SCR/DPF and DEF (Urea) delete tuning included. EGR delete also supported with optional hardware" (Product No. NDASH11-14POWERSTROKE).

122. The product manuals and/or installation instructions for certain of the Defendants' Delete Tunes illustrate how they bypass, defeat, or render inoperative EGR, DPF, DOC, SCR, NAC, and OBD.

123. For example, instruction manuals for some of Defendants' Delete Tunes include the following statements:

- H&S MiniMaxx Race Tuner Product No. 109003: "For all H&S Race tunes, EGR MUST BE TURNED OFF!! To turn off EGR flow, please follow steps below. EGR can be blocked or removed as well, but the following steps MUST be taken for trouble free operation" and "For 2010, Cummins has changed their EGR programming. It is no longer necessary to unplug the EGR system if you are installing DPF delete tuning on a 2010 6.7L Cummins. You can still, however, remove the entire EGR system using an H&S EGR Delete kit. Whether you decide to remove the entire EGR system, or leave it plugged in as factory, the EGR will NOT function and will NOT throw check engine lights."

- PPE Xcelerator: "This race tuner will reprogram engine computer to remove all limp home engine safety self protection features such as auto power reduction or power down due to high engine coolant temperature, low oil pressure, high or low fuel pressure, low or high boost pressure or any sensor failure." (Product No. 111040000).

United States v. Rudy's et al. Complaint                                        Page 32.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 32 of 53

- MiniMaxx Tuner Product No. 109007: "Most 2011-2013 6.7L Powerstrokes are equipped with an emissions system…if you have removed or modified this emissions system (or plan to immediately after installing this device), proper tuning must be installed or the vehicle will not operate correctly. Select REMOVED at this option for a modified emissions system" and "the UREA system must at least be unplugged but can be completed [sic] removed from the vehicle if desired. Failure to unplug the UREA system may result in a check engine light and/or dash messages. Follow these instructions to unplug the UREA system:"

- Custom 2011-2016 Ford 6.7 Powerstroke Programmer: "you will need to unplug EGR connectors under the hood" (Product No. 400C67).

124. The OBD System and each Certified Stock Calibration is an "element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [CAA] regulations" within the meaning of Section 203(a)(3)(B) of the CAA, 42 U.SC. § 7522(a)(3)(B).

125. Each of Defendants' Delete Tunes is, and at all relevant times herein was, intended for use with EPA-certified motor vehicles and motor vehicle engines, including Powerstroke engines in Ford vehicles, Duramax engines in GM vehicles, and Cummins engines in Dodge vehicles.

126. A principal effect of each of Defendants' Delete Tunes is, and at all relevant times herein was, to bypass, defeat or render inoperative a Certified Stock Calibration related to a motor vehicle's EGR System, Aftertreatment System, engine operation and combustion, and/or OBD System.

127. Defendants knew or should have known that each of Defendants' Delete Tunes was being offered for sale or installed for such use or put to such use.

United States v. Rudy's et al. Complaint                                                            Page 33.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 33 of 53

128.    Each copy of Defendants' Delete Tunes is a separate violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B).  42 U.S.C. § 7524(a).

129.    Defendants' violations as alleged in this Count resulted in excess emissions from motor vehicles of various air pollutants.

130.    For each violation of Section 203(a)(3)(B), Defendants are each liable to the United States for injunctive relief and civil penalties of up to the amounts set forth in Paragraph 30 above.

## FOURTH CLAIM FOR RELIEF
### *Removing or Rendering Inoperative Emissions-Related Devices or Elements of Design in Violation of the CAA*

131.    The United States re-alleges Paragraphs 1 through 76 above as if fully set forth herein.

132.    From January 1, 2014, and continuing thereafter, Defendants installed, or caused persons (including, but not limited to, their employees) to install EGR Delete Hardware Products, Aftertreatment System Delete Hardware Products, and/or Delete Tunes on or in motor vehicles and/or motor vehicle engines after the sale and delivery of the vehicle and/or engine to the ultimate purchaser.

133.    Defendants' installation of EGR Delete Hardware Products, After Treatment System Delete Hardware Products, and Delete Tunes (or the causing thereof) remove or render inoperative devices or elements of design installed on or in motor vehicles or motor vehicle engines in compliance with the regulations promulgated under Title II of the CAA.

United States v. Rudy's et al. Complaint                                        Page 34.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 34 of 53

134. Defendants knew that the installation of the EGR Delete Hardware Products, Aftertreatment System Delete Hardware Products, and Delete Tunes removed or rendered inoperative devices or elements of design installed on or in motor vehicles or motor vehicle engines in compliance with the regulations promulgated under Title II of the CAA.

135. Each installation of the EGR Delete Hardware Products, Aftertreatment System Delete Hardware Products, and Delete Tunes by, or caused by, Defendants on each motor vehicle or motor vehicle engine constitutes a separate violation of Section 203(a)(3)(A) and (B) of the CAA, 42 U.S.C. § 7522(a)(3)(A) and (B).

136. Defendants' violations as alleged in this Count resulted in excess emissions from motor vehicles of various air pollutants.

137. For each violation of Section 203(a)(3)(A) and (B), Defendants are each liable to the United States for injunctive relief and civil penalties of up to the amounts set forth in Paragraph 30 above.

**FIFTH CLAIM FOR RELIEF**
*Failure to Provide Requested Information to EPA*
*In Violation of the CAA*

138. The United States re-alleges Paragraphs 1 through 76 above as if fully set forth herein.

139. Pursuant to Section 208 of the Act, manufacturers and other persons subject to the motor vehicle emissions provisions of the Clean Air Act (including those provisions at issue here) must "provide information the [EPA] may reasonably require to determine whether the manufacturer or other person has acted or is acting in compliance with [these

United States v. Rudy's et al. Complaint                                                                 Page 35.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 35 of 53

provisions] . . . and regulations thereunder, or to otherwise carry out [these provisions]." 42 U.S.C. § 7542(a).

140.   Defendant Rudy's Performance Parts and Aaron Rudolf are each persons subject to Part A (Motor Vehicle Emission and Fuel Standards) of Subchapter II of the CAA.

141.   As part of its investigation into whether Defendants' manufacture and sale of the Subject Products violated Section 203 of the Clean Air Act, on December 7, 2016, EPA issued the First Request for Information pursuant to Section 208 of the CAA to Rudy's Performance Parts and to Aaron Rudolf, who as President of Rudy's Performance Parts had the power to cause Rudy's to respond to the request.  42 U.S.C. § 7542.

142.   EPA's First Request for Information required Defendants to provide multiple types of information regarding each product it manufactured or sold after January 1, 2014, that "replaces, modifies, bypasses, allows for deletion or partial deletion, or affects" various Emissions-Related Elements of Design and to certify its responses.

143.   As set forth in Table 1 hereto, in response to most of EPA's queries, Defendants failed to provide all information required by EPA's First Request for Information, or provided such information after the dates the information was due.

144.   On numerous occasions, EPA advised Defendants that their responses to the First Request for Information were incomplete.

145.   As of the date of this Complaint, Defendants have not yet completely responded to the First Request for Information.

United States v. Rudy's et al. Complaint                                                                Page 36.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 36 of 53

146.    Each failure to provide complete information required by EPA's First Request for Information is a violation of Section 203(a)(2)(A) of the CAA.  42 U.S.C. § 7522(a)(2)(A).

147.    For each violation of Section 203(a)(2)(A) of the CAA, Defendants are each liable to the United States for civil penalties of up to the amount set forth in Paragraph 35 above.

**SIXTH CLAIM FOR RELIEF**
***Failure to Provide Requested Information to EPA***
***In Violation of the CAA***

148.    The United States re-alleges Paragraphs 1 through 76 above as if fully set forth herein.

149.    Pursuant to Section 208 of the Act, manufacturers and other persons subject to the motor vehicle emissions provisions of the Clean Air Act (including those provisions at issue here) must "provide information the [EPA] may reasonably require to determine whether the manufacturer or other person has acted or is acting in compliance with [these provisions] . . . and regulations thereunder, or to otherwise carry out [these provisions]." 42 U.S.C. § 7542(a).

150.    Defendants are each persons subject to Part A (Motor Vehicle Emission and Fuel Standards) of Subchapter II of the CAA.

151.    As part of its investigation into whether Defendants' manufacture and sale of the Subject Products violated Section 203 of the Clean Air Act, on October 1, 2018 EPA issued a Second Request for Information pursuant to Section 208 of the CAA to Rudy's

United States v. Rudy's et al. Complaint                                                    Page 37.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 37 of 53

Performance Parts and to Aaron Rudolf, who as President of Rudy's Performance Parts had the power to cause Rudy's to respond to the request.  42 U.S.C. § 7542.

152.   EPA's Second Request for Information required Defendants to provide multiple types of information regarding each product it manufactured or sold after January 1, 2014, that "replaces, modifies, bypasses, allows for deletion or partial deletion, or affects" various Emissions-Related Elements of Design and to certify its responses.  The Second Request for Information included some of the requests in the First Request for Information as well as additional information requests.

153.   As set forth in Table 2 hereto, in response to most of EPA's queries, Defendants failed to provide all information required by EPA's Second Request for Information, or provided such information after the dates the information was due.

154.   On numerous occasions, EPA and/or the Department of Justice advised Defendants that their responses to the Second Request for Information were incomplete.

155.   As of the date of this Complaint, Defendants have not yet completely responded to the Second Request for Information.

156.   Each failure to provide complete information required by EPA's Second Request for Information is a violation of Section 203(a)(2)(A) of the CAA.  42 U.S.C. § 7522(a)(2)(A).

157.   For each violation of Section 203(a)(2)(A) of the CAA, Defendants are liable to the United States for civil penalties of up to the amount set forth in Paragraph 35 above.

United States v. Rudy's et al. Complaint                                                  Page 38.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 38 of 53

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that this Court:

A.      Assess civil penalties against Defendants for each violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B), in the amount of $3,750 for each violation occurring between January 13, 2009 and November 2, 2015, and up to $5,179 for each violation occurring after November 2, 2015;

B.      Assess civil penalties against Defendants for each motor vehicle or motor vehicle engine on which Defendants removed or rendered inoperative or caused to remove or render inoperative, and for each part or component they installed that removed or rendered inoperative, or caused to remove or render inoperative, a device or element of design in violation of Section 203(a)(3)(A) of the CAA, 42 U.S.C. § 7522(a)(3)(A), in the amount up to $3,750 occurring on or after January 13, 2009, through November 2, 2015, and up to $5,179 for each violation occurring after November 2, 2015;

C.      Assess civil penalties against Defendants for failure to timely provide information in response to EPA's First Information Request in an amount up $51,796 per day per information request for each violation occurring after November 2, 2015, and assessed on or after January 12, 2022.  42 U.S.C. §§ 7524(a), 7525(a), as modified by 40 C.F.R. § 19.4.

D.      Assess civil penalties against Defendants for failure to timely provide information in response to EPA's Second Information Request in an amount up $ 51,796 per day per information request for each violation occurring after November 2, 2015, and

assessed on or after January 12, 2022.  42 U.S.C. §§ 7524(a), 7525(a), as modified by 40 C.F.R. § 19.4.

      E.     Permanently enjoin each Defendant from manufacturing, selling, offering to sell, or installing motor vehicle parts or components intended for use with a motor vehicle or motor vehicle engine where a principal effect of such part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with Title II of the CAA;

      F.     Order the Defendants to take other appropriate actions to remedy, mitigate, and offset the harm caused by their alleged CAA violations;

      G.     Award the United States its costs and disbursements in this action; and

      H.     Award such other and further relief as the Court may deem just and proper.

               Respectfully submitted,

               TODD KIM
               Assistant Attorney General
               Environment and Natural Resources Division

               */s/ Elizabeth L. Loeb*
               ELIZABETH L. LOEB
               Senior Attorney
               U.S. Department of Justice
               Environment and Natural Resources Division
               Environmental Enforcement Section
               P. O. Box 7611
               Washington, D.C. 20044
               (202) 616-8916
               Elizabeth.loeb@usdoj.gov

United States v. Rudy's et al. Complaint                Page 40.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 40 of 53

SANDRA J. HAIRSTON
United States Attorney

*/s/ Rebecca Mayer*
Rebecca A. Mayer, TX Bar # 24092376
Cassie L. Crawford, NCSB # 45396
Assistant U.S. Attorneys
101 South Edgeworth Street, 4th Floor
Greensboro, North Carolina 27401
(336) 333-5351
cassie.crawford@usdoj.gov
rebecca.mayer@usdoj.gov

OF COUNSEL:

LAUREN TOZZI
Attorney-Advisor
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

United States v. Rudy's et al. Complaint                                                                 Page 41.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 41 of 53

**Table 1: December 7, 2016 Information Request**

| Request For Information | Response Deficiency |
|---|---|
| For all Requests | Failure to Certify Response |
| Request No. 2. For each part or component offered for sale or sold between January 1, 2014 and the present, identify the part or component as:<br>a. an engine tuner:<br>b. an engine tune;<br>c. replaces, modifies, bypasses, allows for deletion or partial deletion, or affects a vehicle's:<br>i. electronic control module or other part of an engine's control system;<br>ii. diesel particulate filter ("DPF") system;<br>iii. exhaust gas recirculation ("EGR") system;<br>iv. catalytic converter system ("catalyst"):<br>v. on-board diagnostic system ("OBD");<br>vi. selective catalytic reduction system ("SCR");<br>vii. any other emissions related parts. | Failure to Provide Requested Information |
| Request No. 3. For each part or component offered for sale or sold provide a description of the part or component if not included in response to Request 2.a.-c. above. | Failure to Provide Requested Information |
| Request No. 4. For each part or component identified in Requests 2.a.-2.c., provide a list of all websites, magazines, trade publications, and any other media in which you advertised the part or component at any time since January 1, 2014, and provide copies of such advertisements. | Failure to Provide Requested Information |
| Request No. 5. For each part or component identified in Requests 2.a.-2.c., submit copies of any applicable installation or operation guides or manuals. | Failure to Provide Requested Information |
| Request No. 6. Provide a description of all of the methods Rudy's utilizes or has utilized since January 1, 2014, to tune ECMs and identify all locations by address where Rudy's conducts tunes of ECMs. | Failure to Provide Requested Information |
| Request No. 7. Provide a description of any software application you utilize or have utilized since January 1, 2014, to tune ECMs, and provide all user manuals associated with such software application(s). | Failure to Provide Requested Information |

United States v. Rudy's et al. Complaint                                    Page 42.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 42 of 53

| | |
|---|---|
| Request No. 8.   Identify the names of all Rudy's employees or individuals assisting Rudy's in creating software tunes for ECMs since January 1, 2014. | Failure to Provide Requested Information |
| Request No. 9.   For parts or components that are identified in response to Requests 1 through 2 above, state whether any emission testing was conducted to assess the effect such parts or components have on vehicle emissions and provide the following information: a. A description of the test, including identification of part or component and vehicle, the EPA engine family, name of the vehicle, test equipment, test protocols, and calibration procedures; b. A sample test report and any training or instructional materials used for educating employees and affiliated persons about how to perform the test; and c. The date and location of the test, the name and position of the person who conducted the test, and the test results. | Failure to Provide Requested Information |
| Request No. 10.   For parts or components that are identified in response to Requests l through 2 above, state whether you or any person submitted an application for an Executive Order to the California Air Resources Board and provide a copy of the application for each part or component. State whether each component received an Executive Order exempting the component from California's emission control system anti-tampering law, California Vehicle Code § 27156.  If the component received an Executive Order, provide the Executive Order number and state whether the California Air Resources Board required any change the component or application in order to receive approval. | Failure to Provide Requested Information |
| Request No. 11.   Please state "yes" or "no," if Rudy's has ever manufactured and imported any vehicle and engine parts and components. | Failure to Provide Requested Information |
| Request No. 12.   If the answer to Request 11 is yes, then please provide a list of all parts and components manufactured and imported by Rudy's. | Failure to Provide Requested Information |
| Request No. 13.   Please state "yes" or "no," if, since January 1, 2014, Rudy's has installed a part or component on or modified any compression or spark ignition engine. | Failure to Provide Requested Information |

United States v. Rudy's et al. Complaint                                    Page 43.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 43 of 53

| | |
|---|---|
| Request No. 14.  If the answer to Request 9 is yes, then please provide a full detailed account of the installations and modifications of those vehicles and engines, including, but not limited to: a list of all invoices, parts and components installed, make and model of the vehicle/engine, ECM tuning conducted, tuners installed, and the names of the individuals who conducted the installation or modifications. | Failure to Provide Requested Information |
| Request No. 15.  Identify each individual responsible for responding to this Request for Information, including his/her title(s), the request(s) to which each individual responded, and the period of time for which each individual is providing a response. | Failure to Provide Requested Information |
| Request No. 16.  Provide a copy of Rudy's certificate of good standing, articles of incorporation, by-laws, and partnership or membership agreements, as applicable. Provide a list of Rudy's officers, directors, shareholders, members, managers, or partners, as applicable. | Failure to Provide Requested Information |
| Request No. 17.  Provide a list of all companies, domain names, or any other public facing name which are owned by or affiliated with Rudy's. | Failure to Provide Requested Information |

United States v. Rudy's et al. Complaint                                                    Page 44.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 44 of 53

**Table 2:  October 31, 2018 Information Request**

| Request For Information | Response Deficiency |
|---|---|
| For all Requests | Failure to Certify Responses as Required by Information Request. |
| Request 3.b. For each product identified in response to Requests 1 and 2, provide the product manufacturer. | Incomplete Response.  Rudy's Performance Parts did not identify the manufacturer of all products identified in response to Requests 1 and 2. |
| Request 3.c. For each product identified in response to Requests 1 and 2, provide the quantity Rudy's purchased from January 1, 2014, through the date of this Information Request. | Failure to Provide Requested Information. |
| Request 3.d. For each product identified in response to Requests 1 and 2, provide the price Rudy's paid for each product. | Failure to Provide Requested Information. |
| Request 3.e. For each product identified in response to Requests 1 and 2, provide the name of each person or entity from whom Rudy's purchased each product. | Incomplete Response.  Rudy's Performance Parts did not provided the name of each person or entity from whom it purchased each product identified in Requests 1 and 2. |
| Request 3.g. For each product identified in response to Requests 1 and 2, provide the average Rudy's sale price. | Incomplete Response.   Rudy's Performance Parts did not provide the sales price for all products identified in Requests 1 and 2. |
| Request 3.h. For each product identified in response to Requests 1 and 2, provide the quantity Rudy's installed during the period January 1, 2014 through the date of this Information Request. | Failure to Provide Requested Information. |

United States v. Rudy's et al. Complaint                                                    Page 45.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 45 of 53

| | |
|---|---|
| Request 4. For each product identified in response to Request 1 and 2, provide the product's vehicle applications by make, model, engine type, and year. | Incomplete Response. Rudy's Performance Parts did not provide the product's vehicle applications for each product identified in Requests 1 and 2. |
| Requests 7.a-k. For each product identified in response to Request 1, identify whether the product is capable of: <br> a. disabling the EGR without illuminating a MIL or prompting any on-board DTC; <br> b. disabling the EGR without any engine derating; <br> c. allowing the removal of the EGR without illuminating a MIL or prompting any on-board DTC; <br> d. allowing the removal of the EGR without any engine derating; <br> e. allowing the removal of the DPF without illuminating a MIL or prompting any on-board DTC; <br> f. allowing the removal of the DPF without any engine derating; <br> g. allowing the removal of a catalyst without illuminating a MIL or prompting any on-board DTC; <br> h. allowing the removal of a catalyst without any engine derating; <br> i. allowing the removal of a SCR system without illuminating a MIL or prompting any on-board DTC; <br> j. allowing the removal of a SCR system without any engine derating; or <br> k. bypassing or altering parameters to prevent DTC's or MILs from being recorded or illuminated. | Incomplete Response. Rudy's Performance Parts failed to provide the requested information with respect to each product identified in Request 1. |
| Request 9.a. For each product identified in response to Requests 1 and 2, provide the following information, a description of the product. | Incomplete Response. Rudy's Performance Parts failed to provide a description of each product identified in response to Requests 1 and 2. |

United States v. Rudy's et al. Complaint                                      Page 46.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 46 of 53

| | |
|---|---|
| Request 9.b. For each product identified in response to Requests 1 and 2, provide the following information, a description of all stock components it replaces. | Incomplete Response. Rudy's Performance Parts failed to provide a description of the stock components replaced by each product identified in response to Requests 1 and 2 |
| Request 9.c. For each product identified in response to Requests 1 and 2, provide the following information, a description of how the product differs from the stock components it replaces or how the product changes the stock configuration. If the product is a tune, provide a description of how the product differs from the stock ECM calibration or specifically changes the stock ECM calibration. You may submit engine calibration maps. Any engine calibration map You submit must include a description of the calibration map and a description of how the product modifies the calibration map. | Incomplete Response. Rudy's Performance Parts failed to provide a description of each product identified in response to Requests 1 and 2 differs from stock components or changes stock configuration. |
| Request 10.a. For each product identified in response to Requests 1 and 2, to the extent not already provided, provide a detailed written description of all methods by which the product has been promoted or publicized by Rudy's including but not limited to, print media, commercial websites, point of sale webpages, event promotion or sponsorship, trade show promotion, or social media promotion, including promotion dates and/or date ranges, if applicable. | Incomplete Response. Rudy's Performance Parts failed to provide a detailed written description of all methods by which the product has been promoted or publicized by Rudy's including but not limited to, print media, commercial websites, point of sale webpages, event promotion or sponsorship, trade show promotion, or social media promotion, including promotion dates and/or date ranges, if applicable. |
| Request 10.b. For each product identified in response to Requests 1 and 2, to the extent not already provided, provide copies of all advertisements for the product published in print or electronic media, including commercial websites, point-of-sale webpages, or social media. | Incomplete Response. Rudy's Performance Parts failed to provide copies of all advertisements for the product published in print or electronic media, including commercial |

United States v. Rudy's et al. Complaint                    Page 47.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 47 of 53

| | |
|---|---|
| | websites, point-of-sale webpages, or social media. |
| Request 10.c. For each product identified in response to Requests 1 and 2, to the extent not already provided, provide a list of other entities known to have advertised the product. | Failure to Provide Requested Information. |
| Request 10.d. For each product identified in response to Requests 1 and 2, to the extent not already provided, provide all manuals available (e.g., owner's and installation). | Incomplete Response. Rudy's Performance Parts failed to provide all manuals available for the products listed in Requests 1 and 2. |
| Requests 11.a-c. For products identified in response to Requests 1 and 2, state whether Rudy's or any other entity conducted tests measuring emissions of hydrocarbons, carbon monoxide, nitrogen oxides, or particulate matter, including tests that measure the impact of the product on motor vehicle emissions or that measure the impact of the product on a vehicle's emission control devices or elements of design. For each such test, provide the following information, a description of the test, including identification of the product and vehicle, the EPA engine family, name of the vehicle, test equipment, test protocols, and calibration procedures, a sample test report and any training or instructional materials used for educating employees and affiliates about how to perform the test, the date and location of the test, the name and position of the person that conducted the test, and the test results. | Incomplete Response. For all products identified in response to Requests 1 and 2, Rudy's Performance Parts failed to identify whether Rudy's or any other entity conducted tests measuring emissions of hydrocarbons, carbon monoxide, nitrogen oxides, or particulate matter and if so, provide the requested information regarding such tests. |
| Request 12. For products that are identified in response to Requests 1 and 2, state whether Rudy's or any other entity submitted an application for an Executive Order to the California Air Resources Board and, if so, provide a copy of the application for each product. State whether each product received an Executive Order exempting the product from California's emission control system anti-tampering law, California Vehicle Code Section 27156. If the | Failure to Provide Requested Information. |

United States v. Rudy's et al. Complaint                                      Page 48.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 48 of 53

| | |
|---|---|
| product received an Executive Order, provide the Executive Order number and state whether the California Air Resources Board required changes to the product or application to receive approval. | |
| Request 14. Provide a detailed, written description of the business relationship between Rudy's and the manufacturer of each product identified in response to Requests 1 and 2, including any changes to the business relationship since its inception, and any and all supporting documentation (including but not limited to contracts and licenses). | Incomplete Response. Rudy's Performance Parts did not provide a detailed written description of the business relationship between Rudy's and the manufacturer of each product identified in response to Requests 1 and 2. |
| Request 15. Provide a detailed, written description of Rudy's role in the manufacture, creation, design, development, fabrication, production, or programming of each product identified in response to Requests 1 and 2. | Failure to Provide Requested Information. |
| Request 19. Please state "yes" or "no" if since January 1, 2014, Rudy's has installed a part or component on or modified any compression or spark ignition engine. | Failure to Provide Requested Information. Rudy's Performance Parts has not as requested stated "yes" or "no" to this question as phrased. |
| Requests 20.a-g. If the answer to the previous question regarding whether since Jan 1, 2014, Rudy's has installed a part or component on or modified any compression on spark engine, is yes, provide a full detailed account of the installations and/or modifications of those vehicles and engines, including, but not limited to a. all locations where such installations and/or modifications were conducted; b. invoices and work orders; c. parts and components installed; d. the make and model of each vehicle/engine; e. a description of the ECM tuning conducted; f. listing of any tunes or tuners installed; g. and the names of the individuals who conducted the installation and/or modifications. | Failure to Provide Requested Information. Rudy's Performance Parts has not provided a full detailed account of the installations and/or modifications of those vehicles and engines with the information requested in 20 a-g. |

| | |
|---|---|
| Request 35.  Please state "yes" or "no": did Rudy's provide all correspondence between rudysperformanceparts@gmail.com and Punch It in Rudy's Partial Response to the 2016 RFI? | Failure to Provide Requested Information.  Rudy's Performance Parts has not as requested stated "yes" or "no" to this question. |
| Request 37.   Please state "yes" or "no": did Rudy's provide all correspondence between arudolf@rudysdiesel.com and Punch It in Rudy's Partial Response to the 2016 RFI, including any correspondence between arudolf@rudysdiesel.com and Punch It since Rudy's Partial Response to the 2016 RFI. · | Failure to Provide Requested Information.  Rudy's Performance Parts has not as requested stated "yes" or "no" to this question. |
| Request 39. Provide a list of all H&S Products sold by Rudy's. | Incomplete Response.  Rudy's Performance Parts failed to provide a list of all H&S Products it sold. |
| Requests 40.a-b. Please identify the source of all H&S Products that Rudy's has sold since January 1, 2014, including, but not limited to the name(s) and contact information of any person(s) who sold or manufactured H&S Products to Rudy's.  Please answer separately for each component of any H&S product sold, including tune files. | Incomplete Response.  Rudy's Performance Parts did not identify the source of all H&S Products it sold including the name and contact information for the person who sold or manufactured such products. |
| Request 42. Please provide all correspondence, contracts, and agreements between Rudy's and any source of H&S Products. | Incomplete Response.  Rudy's Performance Parts did not provide all correspondence, contracts and agreements between it and all sources of all H&S Products. |
| Request 46. Please state "yes" or "no," if, since February 1, 2017, Rudy's has purchased or manufactured H&S Products. | Failure to Provide Requested Information.  Rudy's Performance Parts did not as requested stated "yes" or "No" to the question. |
| Requests 47.a-g. If the answer to the previous questions is "yes," provide the following information about each product<br>a. the quantity purchased;<br>b. the quantity manufactured;<br>c. the name(s) or the person(s) who sold each H&S Product to Rudy's; | Failure to Provide Requested Information.  Rudy's Performance Parts failed to provide the information requested in Requests 47 a-f regarding H&S Products |

United States v. Rudy's et al. Complaint                                    Page 50.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 50 of 53

| | |
|---|---|
| d.  the name(s) or the person(s) who manufactured each H&S Product to Rudy's; <br><br> e.  the address of the source(s) of each H&S Product; and <br><br> f.  any other information for the source(s) of H&S Products. | purchased or manufactured after February 1, 2017. |
| Request 48. Is Rudy's actively engaged in any business relationship with the person(s) described in the response to the previous question. | Failure to Provide Requested Information.   Rudy's Performance Parts failed to describe any business relationships with persons identified in response to Requests 47.c-d. |
| Request 52.  Please state "yes" or "no," if, since February 1, 2017, Rudy's has purchased any H&S Products. | Failure to Provide Requested Information.  Rudy's Performance Parts failed to answer "yes" or "no" as to whether they have purchased any H&S Products. |
| Request 53. Please state "yes" or "no," if, since December 17, 2015, H&S has provided technical support for Rudy's. | Failure to Provide Requested Information.  Rudy's Performance Parts failed to answer "yes" or "no" as to whether H&S has provided technical support for Rudy's after December 17, 2015. |
| Request 54. If "yes" describe the nature of such technical support | Failure to Provide Requested Information.  Rudy's Performance Parts failed to describe the nature of any technical support provided by H&S after December 17, 2015. |
| Request 58. Please state "yes" or "no," if, since February 1, 2017, Rudy's has purchased products from Quarter Mile Tunz. | Failure to Provide Requested Information.  Rudy's Performance Parts failed to answer "yes" or "no" as to whether since February 1, 2017, it has purchased |

United States v. Rudy's et al. Complaint                                         Page 51.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 51 of 53

| | |
|---|---|
| | products from Quarter Mile Tunz. |
| Requests 59 a-d. If the answer to the previous questions is "yes," provide the following information about each product.<br>a. the quantity purchased<br>b. the name(s) of the person(s) who sold each product to Rudy's.<br>c. the address of the source(s).<br>d. any other contact information for the source(s) | Failure to Provide Requested Information. Rudy's Performance Parts s failed to provide information requested in Requests 59.a-d regarding purchases from Quarter Mile Tunz. |
| Request 60. Is Rudy's actively engaged in any business relationship with the person(s) described in the response to the previous question. | Failure to Provide Requested Information. Rudy's Performance Parts failed to provide information requested on the business relationship with persons described in response to Requests 59.b and d. |
| Requests 61.a-b. For each product that Rudy's purchased from Quarter Mile Tunz, indicate whether the product has also been identified in response to Requests 1 and 2 and if not describe the product in detail. | Failure to Provide Requested Information. Rudy's Performance Parts failed indicate whether each product purchased from Quarter Mile Tunz has been identified in Response to Requests 1 and 2 and describe any products not listed in detail. |
| Requests 67a-i. Please state "yes" or "no," if, since January 1, 2014, Rudy's has purchased or sold any of the following products:<br>a. Edge Racing Evolution (Part No. 15500)<br>b. Edge Racing Evolution (Part No. 25500)<br>c. Edge Racing Juice with Attitude (Part No. 30908)<br>d. Edge Racing Juice/ Attitude CS (Part No. 31205)<br>e. Edge Racing Juice/ Attitude CS (Part No. 31206)<br>f. Edge Racing Juice/ Attitude CTS (Part No. 31305)<br>g. Edge Racing Juice/ Attitude CTS (Part No. 31306)<br>h. Edge Racing Evolution CS (Part No. 85600) | Failure to Provide Requested Information. Rudy's Performance Parts failed to answer "yes" or "no" as to whether it have purchased or sold any of the products listed in Requests 67.a-i. |

United States v. Rudy's et al. Complaint      Page 52.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 52 of 53

| 1. Edge Racing Evolution CTS (Part No. 85700) | |
| --- | --- |
| | |

United States v. Rudy's et al. Complaint                                    Page 53.

Case 1:22-cv-00495-TDS-LPA   Document 1   Filed 06/29/22   Page 53 of 53