IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:22cv495 |
| ) | |
| RUDY'S PERFORMANCE PARTS, ) | |
| INC., d/b/a Rudy's, Rudy's ) | |
| Diesel, Rudy's Diesel ) | |
| Performance, and Rudy's Diesel ) | |
| Performance and Offroad; and ) | |
| AARON RUDOLF, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This is a civil action seeking injunctive relief and civil penalties, among other remedies, pursuant to the Clean Air Act, 42 U.S.C. § 7401 et seq. Before the court is the motion to stay this case by Defendants Rudy's Performance Parts, Inc., d/b/a Rudy's, Rudy's Diesel, Rudy's Diesel Performance, and Rudy's Diesel Performance and Offroad (collectively "Rudy's") and Aaron Rudolf ("Rudolf") because of a parallel criminal investigation by the United States Department of Justice. (Doc. 11.) The Government opposes the motion. (Doc. 24.)[1] For the reasons set forth below, Defendants' motion to stay will be granted in part and denied in

---

[1] The court previously granted motions to seal portions of the briefing. (Doc. 33.) References to the record herein will be made to the sealed briefing.

part.

## I. BACKGROUND

According to the allegations of the complaint and the undisputed representations of the parties, Defendant Rudolf started the various Defendant companies around 2007. (Doc. 13 at 8.) Rudy's hosts truck races, as well as builds and races vehicles. (Id.) Until 2019, Rudy's also sold "performance aftermarket-parts" to various consumers, and the Government contends that "some, but not all," of these parts could be installed and operated in a manner that circumvents Environmental Protection Agency ("EPA") and Clean Air Act ("CAA") regulations. (Id. at 9.) These "defeat devices" can affect a vehicle's performance and "under certain circumstances" may circumvent emissions controls. (Id.)

In 2016, the EPA "served a request for information" on Defendants. (Id. at 10.) The request "sought extensive information concerning Defendants' sales and installations of parts" and aimed to "determine [Defendants'] compliance" with the CAA. (Id.) The Government and Defendants continued discussions sporadically until 2018, when the EPA served a second request for information on Defendants. (Id. at 11.) The Government contends that Defendants were largely unresponsive to its requests and gave "incomplete or inconsistent" responses. (See Doc. 24 at 8.)

On February 19, 2019, the Department of Justice "informed

2

Defendants that [the] EPA had referred 'alleged violations of the Clean Air Act for civil prosecution.'" (Doc. 13 at 12.) Defendants disagreed with the Government's accusations but agreed to stop selling the disputed defeat devices. (Id.)

The Government contends that Defendants have not stopped selling all offending products. (Doc. 24 at 9.) In April 2019, the EPA conducted a search of Defendants' facilities and collected electronic and hard-copy data. (Doc. 13 at 12.) The parties have conducted negotiations since 2019 (see id.), but on June 29, 2022, the Government filed this civil action.

Since 2019, the Government has run a parallel criminal investigation. (Doc. 24 at 9; see Doc. 13 at 13.) To date, no indictment has been handed down and no criminal proceeding has commenced. (Doc. 24 at 9.) The Government contends that in 2021, Defendants' counsel "informed the United States that it did not have adequate financial resources to pay an appropriate penalty." (Id.) The Government maintains that this notice "raised concerns regarding the disposition of the Defendants' significant financial gains from their defeat device business and whether they will have the funds necessary to pay a penalty and finance mitigation to offset harm caused by sale [of] Defendants' defeat devices." (Id. at 9-10.) The Government states that it commenced the present civil action "to avoid further prejudice to its civil case caused by additional delay and potential depletion of assets." (Id. at

3

10.)

The complaint alleges that Defendants violated the CAA by selling, offering to sell, or installing parts that could bypass emissions regulations.  (See Doc. 1 ¶¶ 53-54.)  Defendants maintain that "[t]he government's positions ignore the plain language of the CAA, legislative history recognizing the longstanding tradition of lawful racing, and statutory limits on the regulatory authority of the [EPA]."[2]  (Doc. 13 at 7.)  Defendants move to stay the civil proceedings "pending resolution of the criminal investigation."  (Doc. 13 at 5.)  The Government acknowledges that both investigations overlap but responds that a stay of proceedings is unwarranted; in the alternative, it contends that sequencing discovery would "address the narrow Fifth Amendment concerns" raised by Defendants.  (Doc. 24 at 23-25.)

**II. ANALYSIS**

    **A. Standard of Review**

"'Because of the frequency with which civil and regulatory laws overlap with criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not mandate the stay of civil proceedings in the face of criminal

---

[2] While the parties disagree on interpretation of various statutory provisions, the merits of their arguments are not presently before the court.

4

proceedings.'" Maryland v. Universal Elections, Inc., 729 F.3d 370, 379 (4th Cir. 2013) (quoting Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 530 (S.D.W. Va. 2005)); see United States v. Kordel, 397 U.S. 1, 11 (1970). Stays are not generally granted before an indictment has issued. See Doe v. City of Gauley Bridge, No. 2:21-cv-00491, 2022 WL 16554698, at *2 (S.D.W. Va. Oct. 31, 2022) (citing Universal Elections, 729 F.3d at 370) (citations omitted). However, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Universal Elections, Inc., 729 F.3d at 379 (quoting Landis v. North American Co., 299 U.S. 248, 254 (1936)). Whether to grant a motion to stay is within the discretion of the trial judge, who must balance various factors "relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." United States v. Georgia Pac. Corp., 562 F.2d 294, 296 (4th Cir. 1977) (citing Landis, 299 U.S. at 254). "A court, however, may decide in its discretion to stay civil proceedings or postpone civil discovery, 'when the interests of justice seem[] to require such action.'" S.E.C. v. Grossman, 121 F.R.D. 207, 210 (S.D.N.Y. 1987) (internal citations committed).

The Fourth Circuit does not appear to have endorsed any particular test for determining whether to stay civil actions

5

during parallel criminal proceedings. See City of Gauley Bridge, 2022 WL 16554698, at *2. However, several courts have utilized a test from Keating v. OTS, 45 F.3d 322, 325 (9th Cir. 1995). See, e.g., City of Gauley Bridge, 2022 WL 16554698, at *2; Ashworth, 229 F.R.D. at 530 (collecting cases). In Keating, the Ninth Circuit considered five factors in determining whether to grant a stay:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Ashworth, 229 F.R.D. at 530 (citing Keating, 45 F.3d at 325). The court in Ashworth, as well as in recent cases, considered a sixth factor: the "relatedness" of the criminal and civil proceedings, including whether the proceedings "involve substantially similar issues." Ashworth, 229 F.R.D. at 530; see also City of Gauley Bridge, 2022 WL 16554698, at *2; Blanda v. Martin & Seibert, L.C., No. CV 2:16-0957, 2017 WL 63027, at *3 (S.D.W. Va. Jan. 5, 2017). Each factor will be considered in turn.

### B.  The Six Factors

#### 1.  Relatedness

The Ashworth court considered the "relatedness" of the

6

parallel proceedings as a threshold matter. Ashworth, 229 F.R.D. at 531. Without a connection between the civil and criminal proceedings, the "myriad of tangible concerns in favor of a stay, including the protection of a defendant's Fifth Amendment interest and the deleterious effect of civil discovery on the prosecution or defense, dissipates." Id. Here, the parties do not dispute that the proceedings are related. (Doc. 24 at 12.) This threshold factor is therefore satisfied.

### 2. The interest of and possible prejudice to Plaintiffs in granting a stay

The Government contends that a stay of the civil proceedings will "prejudice governmental and public interests." (Doc. 24 at 15.) It contends that a "blanket stay jeopardizes the Government's ability to prove its case and achieve the important public interests that underlie it." (Id. at 17.) For instance, the Government seeks to obtain discovery – potentially including multiple parties and issues – from Defendants and third parties. (Id. at 17-21.) The Government contends that through the passage of time "witnesses' memories fade, witnesses die, corporate witnesses dissolve or move offshore, third-party witnesses dispose of relevant documents, and assets that could be used to pay a penalty and perform mitigation are spent." (Id. at 21.) The Government concludes that the significant nature and timespan of the proposed discovery weigh against a stay and that "the

7

indefinite nature of Defendants' requested stay also magnifies the risks" a stay would place on the Government. (Id. at 21-23.)

Defendants contend that a stay "will not cause any prejudice" to the Government. (Doc. 13 at 22.) They argue that the Government must – but fails to – demonstrate some "unique injury" beyond "simply a delay in [the] right to expeditiously pursue its claim. (Id. at 22-23 (collecting cases).) Moreover, Defendants contend that the Government already has collected "all or the overwhelming majority" of the relevant documents" such that "any concern that the passage of time will impact the availability of claims or evidence is not applicable." (Id. at 23.) Finally, Defendants point to the Government's delay in pursuing its claims to date and argue that further delay cannot be prejudicial. (Id. at 23-24.)

The court finds that this factor weighs in favor of the Government and against granting a stay of the civil proceedings. The passage of time can certainly prejudice a plaintiff. See, e.g., Drolett v. Robinson, No. 1:20CV213, 2021 WL 737135, at *4 (W.D.N.C. Feb. 25, 2021) (citing Avalonbay Communities, Inc., v. San Jose Water Conservation Corp., et al., No. 07-306, 2007 WL 2481291 (E.D. Va. Aug. 27, 2007)). An indefinite stay raises the specter of lost documents, faded memories, and diminished financial resources to pay a potential civil penalty. Avalonbay Communities, 2007 WL 2481291, at *4. Moreover, "[b]ecause the commencement date of any criminal proceeding and the exact nature

8

of these proceedings is unknown, Defendants cannot guarantee that evidence will not be lost before criminal prosecution."[3] Id. An indefinite stay could therefore greatly prejudice the Government's ability to obtain future discovery. This prejudice is not determinative, however, and must be weighed against any burden on Defendants.

### 3. Burden on Defendants

Defendants contend that denying a stay "would force Mr. Rudolf to choose between waiving his right to remain silent or suffering adverse inferences that would impair meritorious civil defenses by both defendants of significant consequence to the public." (Doc. 13 at 5.) Further, they argue, "[d]efending the civil action now would impose imminent harm to [D]efendants because Mr. Rudolf would be pressured into waiving his Fifth Amendment rights — thereby prejudicing both his and Rudy's defenses to the criminal investigation." (Doc. 13 at 17.) Defendants also argue that Rudolf's assertion of his Fifth Amendment right will hamper Rudy's ability to defend the civil lawsuit. (Id. at 21.) That is, they contend that "[t]he company can only speak through its officers, so any documents produced or testimony provided by Rudy's typically would come from Mr. Rudolf as the sole officer." (Id. at 21-22.) Therefore, if the Government seeks discovery against Rudy's,

---
[3] In Avalonbay Communities, the parties were non-governmental entities. But the concern of an indefinite stay still applies.

9

Defendants conclude, Rudolf, as the sole officer, would be forced to invoke his Fifth Amendment rights, which would thus hamper Rudy's ability to adequately defend the civil suit. (Id. at 22.) In sum, Defendants contend that allowing this action to proceed will impose a heavy burden on Rudolf and Rudy's.

The Government responds that Defendants' Fifth Amendment claims are "exaggerate[d]" because no indictment has issued nor have criminal proceedings commenced. (Doc. 24 at 12.) The Government also notes that Defendants could appoint another agent to respond to discovery requests on behalf of Rudy's. (Id. (citing Nutramax Labs., Inc. v. Twin Labs., Inc., 32 F. Supp. 2d 331, 337-38 (D. Md. 1999)).) Further, the Government argues, "not all discovery related to Mr. Rudolf threatens his Fifth Amendment right," and the Fifth Amendment does not allow him to refuse to produce documents categorically. (Doc. 24 at 14 (citing United States v. Darwin Const. Co., 632 F. Supp. 1426, 1429 (D. Md. 1986)).)

Defendants are correct that "although the Fifth Amendment privilege against compulsory self-incrimination 'can be asserted in any proceeding,'" invoking it in civil proceedings "is not without possible consequence" because "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Drolett, 2021 WL 737135, at *4 (internal

10

citations omitted). Further, civil defendants who do not assert their Fifth Amendment right may admit adverse criminal conduct that can be used against them in a criminal prosecution. Id. (citing Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 97 (2d Cir. 2012)).

The Fourth Circuit has noted that "when the Government directly or indirectly sponsors a civil suit for the purpose of aiding a criminal investigation, Fifth Amendment and ethical concerns are raised." United States v. Wright, No. 97-2031, 187 F.3d 633, at *2 (4th Cir. 1999) (unpublished) (internal citations omitted). Despite these concerns, a stay of a civil case to permit resolution of a related criminal prosecution is an extraordinary remedy. Louis Vuitton, 676 F.3d at 98 (citing Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1139 (S.D.N.Y. 1995)). Even though a district court may stay civil proceedings while a criminal investigation is ongoing, there is no constitutional mandate to do so. Id. (internal citations omitted). Further, stays are not generally granted before an indictment has issued. See City of Gauley Bridge, 2022 WL 16554698, at *2 (citing Universal Elections, 729 F.3d at 370) (citations omitted).

Even in civil cases where the Government is the plaintiff, courts have found that a stay of all civil proceedings is unwarranted. See, e.g., Grossman, 121 F.R.D. at 210 (denying stay

11

after appreciating the "defendant's dilemma" of possibly asserting the Fifth Amendment privilege and allowing adverse inferences to be drawn against him); S.E.C. v. Musell, 1983 WL 1297, 38 Fed. R. Serv. 2d 426 (S.D.N.Y. 1983) (same); S.E.C. v. First Jersey Securities, Inc., No. 85-cv-8585, 1987 WL 8655 (S.D.N.Y. 1987) (denying stay of parallel civil discovery after determining that the SEC had a legitimate, noncriminal purpose for the civil investigation, even after defendants had refused to comply with several subpoenas issued by the commission); S.E.C. v. Horowitz & Ullman P.C., No. C80-590A, 1982 WL 1576 (N.D. Ga. 1982) (denying stay of civil proceedings despite parallel criminal investigation in the absence of special circumstances leading to substantial and irreparable prejudice to a party).

In some limited circumstances, courts have issued stays when the government is the interested party in both a civil and criminal investigation, but those cases are generally distinguishable. For example, in Chao v. Fleming, 498 F. Supp. 2d 1034, 1040 (W.D. Mich. 2007), the court granted the defendant's motion to stay not only because the civil and criminal investigations overlapped and the government was an interested party in both, but also because the government had already concluded that it had sufficient evidence to seek an indictment, which the court found suggested that an indictment "is not far off." Here, by contrast, there is no indication that an indictment is near to heighten Defendants' Fifth

12

Amendment concerns.  In S.E.C. v Healthsouth Corp, 261 F. Supp. 2d 1298 (N.D. Ala. 2003), the court issued a stay after noting that other defendants in the criminal case had pleaded guilty and were awaiting sentencing and the SEC had worked with the FBI to undertake discovery in the civil action.  This is consistent with the guidance from the Supreme Court which, in United States v. Kordel, suggested there were several circumstances that might warrant granting a stay in parallel proceedings: where the government improperly brought a civil action to obtain evidence for the prosecution; where the government failed to advise the defendant during civil proceedings that it contemplated a criminal prosecution; where the defendant was without counsel; or some other special circumstance.  391 U.S. 1, 11 (1970).  None of those concerns is immediately present here.

The court finds that this factor weighs in favor of the Government except as to Rudolf's personal invocation of his Fifth Amendment rights.  Here, a criminal investigation is ongoing, but no indictment has issued nor has any criminal proceeding commenced.  (Doc. 24 at 9.)  Defendants do not suggest that either is imminent.  The corporate Defendant enjoys no Fifth Amendment right.  United States v. Darwin Const. Co., Inc., 873 F.2d 750, 755-56 (4th Cir. 1989) (citing Braswell v. United States, 487 U.S. 99, 110 (1988) (noting that "the fifth amendment does not apply to a corporation or to a corporation's papers; agents of a corporation hold

13

corporate documents in a representative rather than a personal capacity")). Prejudice is further diminished by the Government's acknowledgement of its ability to limit certain discovery, at least for now, so as not to "implicate Mr. Rudolf's Fifth Amendment rights." (Doc. 24 at 24.) Although Rudolf is Rudy's sole officer, which slightly weighs in favor of a stay and may complicate Rudy's ability to designate someone else to respond to some discovery against the corporate Defendants, Defendants acknowledge that Rudy's employs approximately 20 individuals. This suggests that it could appoint some other knowledgeable employee(s) to respond to discovery requests on the corporate Defendants' behalf. So, while there may be some burden by Rudolf's potential assertion of Fifth Amendment rights, measures can be put in place to alleviate it.

### 4. Judicial Economy

The court's interest is an additional factor to consider. Ashworth, 229 F.R.D. at 530 (citing Keating, 45 F.3d at 325). Defendants contend that the court "has an interest in avoiding unnecessary litigation" and that "granting a stay 'serves the interest of the courts because conducting criminal proceedings first advances judicial economy.'" (Doc. 13 at 24-25 (internal citations omitted).) The Government asserts that the indeterminate nature of any criminal proceedings and the extensive time already put into unsuccessful negotiations counsels against

14

a stay that would only prolong the litigation. (See Doc. 24 at 23.)

This point slightly favors the Government. The court favors prompt resolution of cases. While resolution of any criminal case might increase the prospect of settlement of the civil action, there is no clarity as to when, or even if, criminal proceedings may begin. Indeed, the parties report they have been communicating since 2016.[4] (Doc. 13 at 10.) If past is prologue, any stay might last for years, especially in the presence of the parties' multiple tolling agreements. (Doc. 13 at 14-15.) However, it is not clear that granting a stay, at least for now, will unduly interfere with the court's management of its docket. See Jean v. City of Dallas, Texas, No. 3:18-CV-2862, 2019 WL 4597580, at *5 (N.D. Tex. Sept. 22, 2019) (collecting cases).

### 5. Interests of Third Parties

An additional factor is the effect of a stay on those not party to the civil litigation. Ashworth, 229 F.R.D. at 530 (citing Keating, 45 F.3d 322 at 325). No party raises this as a major factor, and the court does not discern that it weighs for or against granting a stay.

### 6. Interests of the Public

Defendants contend that this case "presents a significant

---

[4] This court clearly cannot be involved in any potential discussions as to the criminal action. Fed. R. Crim. P. 11(c)(1).

15

opportunity to provide clarity for the public" regarding EPA regulations and statutory authority. (Doc. 13 at 26.) They maintain, however, that they "cannot fully present their compelling defenses without Mr. Rudolf waiving his Fifth Amendment privilege," which would harm the public's interest in the court reaching "the correct decision concerning these important issues." (Doc. 13 at 27.) The Government responds that the public interest weighs in favor of denying the stay. The Government cites the public's interest in clean air, stopping and mitigating quickly the alleged harm caused by Defendants, and deterring others from violating the relevant statutes. (Doc. 24 at 16.)

The public clearly has an interest in the just and constitutional resolution of disputes with minimal delay. Jean, 2019 WL 4597580, at *5 (collecting cases). This factor weighs against the grant of the stay of a civil action where no criminal investigation has begun. Id. However, the public also has an interest in protecting the constitutional rights of criminal defendants. Meyers v. Pamerleau, No. 5:15-CV-524, 2016 WL 393552, at *7 (W.D. Tex. Feb. 1, 2016).

In the present case, although there is a parallel criminal investigation, no indictment has issued and no criminal proceeding has commenced. While the public interest is served in protecting the constitutional rights of a defendant, the extent of constitutional implications is unclear. Moreover, the public has

16

an obvious interest in compliance with the Nation's environmental laws. To the extent Defendants contend this case raises novel issues to be resolved involving the CAA, that would seem doubtful in light of the Government's representation it has reached consent settlements in some 130 cases involving the same or similar conduct. (Doc. 24 at 2; Doc. 24-1 at 4.) This factor weighs in favor of the Government.

### 7. Balancing Test Conclusion

After carefully weighing these factors, the court finds that Defendants have failed to carry their burden to warrant a complete stay. The only factor that weighs in favor of a stay is the burden on Defendants, and the burden largely pertains to Rudolf. However, Defendants' burden is slight to moderate compared to the prejudice to the Government given that neither an indictment has issued nor have criminal proceedings commenced. There is no indication the Government is bringing this case for an improper purpose; indeed, it reports it has attempted to resolve its civil claims through voluntary means for some time. Further, the public interest is served by allowing the Government to pursue its civil claims in an effort to enforce provisions of the Nation's environmental laws.

## C. Sequencing Discovery

The Government acknowledges the potential of sequencing discovery to address Rudolf's Fifth Amendment concerns. (Doc. 24 at 23.) It contends that Rudolf should be required to answer the

17

complaint and, if necessary, assert his Fifth Amendment privilege. (Id. at 24.)  The Government promises "not [to] seek any adverse inference against Mr. Rudolf for invoking the Fifth Amendment as to specific allegations if it can later require Mr. Rudolf to answer those allegations once discovery is permitted to proceed against him individually."  (Id.)  The Government seeks to proceed with discovery against Rudy's and third parties, as well as seeking documents from Rudolf to allow the Government to understand "the fate of ill-gotten gains from Defendants' defeat device business." (Id.)  In sum, the Government seeks to conduct "all fact and expert discovery . . . as usual" except that, for the first six months, it would not seek any deposition of Rudolf in his individual capacity or serve any requests for admission or interrogatories to Rudolf personally that do not pertain to the corporate Defendants' documents.  (Id.)

Defendants respond that sequencing discovery would create "wasteful duplication and would not expedite resolution of this case."  (Doc. 28 at 11.)  Defendants argue that responses would be incomplete until resolution of any criminal proceedings and that the parties would need to redo discovery eventually.

While the criminal investigation is related to this civil action, because the balancing factors weigh in favor of protecting the Government's interest in pursuing its civil remedies under the applicable environmental laws, the court agrees that the civil

action should move forward to the greatest extent possible. Therefore, Defendants will be required to respond to the complaint, and Rudolf may assert his Fifth Amendment privilege when necessary. However, in light of the Government's concession, Rudolf will not be required to submit to any discovery request, initial disclosure under Federal Rule of Civil Procedure 26, or deposition in his individual capacity for six months. The court notes that the Government agrees not to seek adverse inferences in the civil case against Rudolf as to specific allegations of the complaint if he asserts his Fifth Amendment privilege "if [the Government] can later require Mr. Rudolf to answer those allegations once discovery is permitted to proceed against him individually." (Doc. 24 at 24.) Obviously, this benefits Rudolf only if the threat of criminal proceedings has lifted; otherwise, Rudolf would be forced into the same dilemma, just at some point in the undetermined future. The extent to which the Government will be able to seek adverse inferences in the civil case against Rudolf as to specific allegations if he asserts his Fifth Amendment privilege need not be resolved now and will be revisited by the court. At least for the next six months, the Government will preserve its position that if Rudolf asserts his Fifth Amendment right, it may seek an adverse inference if it later permits Rudolf the opportunity to answer the same allegation but he refuses to do so. In the meantime, if Rudolf declines to answer any discovery request on

19

behalf of Rudy's, Rudy's must designate an agent to respond to those requests, unless excused by the court. See Nutramax Labs, 32 F. Supp. 2d at 337-38. Discovery as to third parties and experts may proceed, absent court order.

In six months, on June 21, 2023, the parties are to provide a status report as to any criminal proceeding and discovery in this case, and they may brief any further extension or lifting of the stay, as well as the issue of any inference that may be raised by Rudolf's invocation of the Fifth Amendment they deem appropriate.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the motion to stay proceedings (Doc. 11) is GRANTED IN PART AND DENIED IN PART, as set out herein, and that pursuant to this court's prior order staying Defendants' time to respond to the complaint (Doc. 33), Defendants shall respond to the complaint within 21 days; and

IT IS FURTHER ORDERED that the parties are to provide a status report as to any criminal proceeding and discovery in this case on June 21, 2023.

                                                    /s/   Thomas D. Schroeder
                                                  United States District Judge
December 21, 2022

Case 1:22-cv-00495-TDS-LPA   Document 34   Filed 12/21/22   Page 20 of 20