IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| RUDY'S PERFORMANCE PARTS, INC. ) | |
| D/B/A Rudy's, Rudy's Diesel, ) | |
| Rudy's Diesel Performance, and ) | 1:22CV495 |
| Rudy's Diesel Performance and ) | |
| Offroad; ) | |
| ) | |
| and ) | |
| ) | |
| AARON RUDOLF, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

The Government filed this action against Defendants Rudy's Performance Parts, Inc., d/b/a Rudy's, Rudy's Diesel, Rudy's Diesel Performance, Rudy's Diesel Performance and Offroad (collectively, "Rudy's"), and Aaron Rudolf alleging multiple violations of the Clean Air Act ("CAA"). (Doc. 1.) Before the court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. (Doc. 35.) The Government responded in opposition (Doc. 40), and Defendants replied (Doc. 44). For the reasons stated below, the motion to dismiss will be denied.

## I. BACKGROUND

The facts alleged in the well-pleaded allegations of the complaint, which are accepted as true for purposes of the pending motion and viewed in the light most favorable to the Government as the non-moving party, are as follows.

### A. Defeat Devices

Rudy's is a closely held corporation located in Burlington, North Carolina, and Rudolf, who resides in Burlington, is its President and Chief Executive Officer. (Doc. 1 ¶¶ 8-10.) The Government contends that from January 1, 2014, to March 31, 2019, Defendants "manufactured, sold, and/or offered to sell products intended for use in 'motor vehicles'" as defined by the CAA. (Id. ¶ 53 (citing 42 U.S.C. § 7550(2) and 40 C.F.R. § 85.1703); id. ¶¶ 78, 96, 114.) More specifically, Defendants "manufactured, sold and/or offered to sell, or caused the manufacture, selling, or offering to sell" aftermarket devices designed to defeat the federally-required emissions controls on motor vehicles ("defeat devices"): EGR Delete Hardware Products,[1] Aftertreatment System

---

[1] An Exhaust Gas Recirculation System ("EGR System") "reduces $NO_x$ emissions by recirculating a portion of engine exhaust gas back through the engine's cylinders, thereby lowering combustion temperature and reducing $NO_x$ formulation." (Doc. 1 ¶ 42.) EGR Delete Hardware Products are products that mitigate the effectiveness of or replace components of the EGR System. (Id. ¶ 50.)

2

Delete Hardware Products,[2] and Delete Tunes.[3]  (Id. ¶ 54.) Defendants sold these products through their website and other online marketplaces. (Id. ¶ 56.) They represented that the defeat devices would "enhance a motor vehicle's power or performance, modify a motor vehicle's fuel economy, or reduce the costs associated with maintaining a motor vehicle's emission control system." (Id. ¶ 55.) In addition, Rudolf sent customers instructions for the defeat devices to remove EGR and Aftertreatment Systems. (Id. ¶ 62.) Rudolf listed some defeat devices online and on Facebook and discussed how to describe defeat devices in a manner to avoid detection by the Environmental Protection Agency ("EPA"). (Id. ¶¶ 63-65.) Further, at one of Rudy's facilities, Defendants installed some of the defeat devices on motor vehicles and/or motor engines. (Id. ¶ 66.)

According to the Government, the defeat devices "removed or rendered inoperative devices and/or elements of design" that were

---

[2] Aftertreatment Systems Hardware Products are a group of filters, catalytic converters, and software that control the emission of pollutants from the engine. (Doc. 1 ¶ 43.) For example, a Diesel Oxidation Catalyst breaks down carbon monoxide and non-methane hydrocarbons into their "less harmful components." (Id. ¶ 43(b).) Aftertreatment System Delete Hardware Products mitigate the effectiveness of or replace Aftertreatment Systems. (Id. ¶ 51.)

[3] Vehicles are equipped with a "suite of pre-set software calibrations" ("Certified Stock Calibrations") that minimize or control emissions and ensure the vehicle can meet CAA requirements. (Doc. 1 ¶ 45.) Delete Tunes are software products uploaded to the vehicle that mitigate the effectiveness of or overwrite a vehicle's Certified Stock Calibrations. (Id. ¶ 52).

3

installed pursuant to the CAA, and Rudy's installed them knowing that the parts would have this effect. (Id. ¶¶ 67-68.) Further, the defeat devices "had a principal effect of bypassing, defeating, and/or rendering inoperative Emission-Related Elements of Design." (Id. ¶ 59.) Moreover, the Government contends that Rudolf failed to use his position to "prevent repeated violations of the CAA." (Id. ¶ 69.)

## B. Requests for Information

On December 7, 2016, the EPA issued a request for information from Defendants pursuant to Section 208(a) of the CAA, 42 U.S.C. § 7542(a), seeking information on any product manufactured or sold by Defendants after January 1, 2014, that "'replaces, modifies, bypasses, allows for deletion or partial deletion, or affects' various Emissions-Related Elements of Design." (Doc. 1 ¶ 71; see Doc. 13-1 at 10-13 (showing the first request for information).)

Rudy's responded to the request for information in installments from January 6, 2017, through July 19, 2017. (Doc. 1 ¶ 72.) However, the responses were "late, incomplete, or deficient." (Id.) This prompted a second request for information on October 1, 2018, demanding much of the same information as the first request. (See id. ¶¶ 73-74.) Further, the Government alleges Rudy's admitted that it failed to "establish[] and/or maintain[] records sought by EPA in the information request" and that it "provided some, but incomplete, information" to the EPA.

4

(Id. ¶ 76.)

### C. Government's Six Claims

The Government alleges six claims against Defendants: manufacturing, selling, and/or offering to sell, or causing the same, EGR Delete Hardware Products in violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B) (Claim I); manufacturing, selling, and/or offering to sell, or causing the same, Aftertreatment System Delete Hardware Products in violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B) (Claim II); manufacturing, selling, and/or offering to sell, or causing the same, Delete Tunes in violation of Section 203(a)(3)(B) of the CAA, 42 U.S.C. § 7522(a)(3)(B) (Claim III); removing or rendering inoperative emissions-related devices or elements of design in violation of Section 203(a)(3)(A) and (B) of the CAA, 42 U.S.C. § 7522(a)(3)(A) and (B) (Claim IV); failing to provide requested information to the EPA in violation of § 203(a)(2)(A) of the CAA, 42 U.S.C. § 7522(a)(2)(A) (Claims V and VI). (Doc. 1 ¶¶ 77-157). The Government seeks civil penalties, an injunction, and costs. (Id. at 39-40.)

## II. ANALYSIS

A Rule 12(b)(6) motion to dismiss is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943,

952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). Rule 12(b)(6) must be read in light of Rule 8's standard that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### A. Defeat Devices (Claims I-IV)

The Government alleges that Defendants manufactured, sold, and/or offered to sell (Claims I-III) and installed (Claim IV) prohibited defeat devices in violation of Sections 203(a)(3)(A) and (B) of the CAA, 42 U.S.C. §§ 7522(a)(3)(A) and (B). These sections prohibit the following acts:

> (A) for any person to remove or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter prior to its sale and delivery to the ultimate purchaser, or for any person knowingly to remove or render inoperative any such device or element of design after such sale and delivery to the ultimate purchaser; or,

6

> (B) for any person to manufacture or sell, or offer to sell, or install, any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with regulations under this subchapter, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use.

A "motor vehicle" for purposes of the statute is "any self-propelled vehicle designed for transporting persons or property on a street or highway." 42 U.S.C. § 7550(2). A vehicle is not a motor vehicle if it: (1) "cannot exceed a maximum speed of 25 miles per hour;" (2) "lacks features customarily associated with safe and practical street or highway use;" or (3) "exhibits features which render its use on a street or highway unsafe, impractical, or highly unlikely." 40 C.F.R. § 85.1703(a)(1). The CAA exempts vehicles used "solely for competition." 42 U.S.C. § 7550(11).

As to Claims I through IV, Defendants argue that the complaint "fails to plausibly allege that Defendants' conduct involved 'motor vehicles' subject to the Clean Air Act." (Doc. 36 at 7.) In Defendants' view, the complaint fails to allege that the Defendants have manufactured, sold, offered to sell, or installed defeat devices in "motor vehicles," as opposed to "competition vehicles." (Id. at 15-16.) Additionally, Defendants offer a view of "motor vehicle" that would not include a stock car that is originally designed as a motor vehicle but undergoes after-market

7

modifications and is then used solely for competition. (Id. at 13).

In response, the Government points to several factual allegations that it contends leads to the reasonable inference that Defendants "installed and intended that their parts be used with 'motor vehicles.'" (Doc. 40 at 6 (citing Doc. 1 ¶¶ 3, 53, 55, 66-68, 89, 107, 125, 132).) The Government supports its allegations in part with the method and scale of Defendants' sales. (Doc. 1 at ¶¶ 2, 83, 100, 121 (stating that Defendants sold more than 250,000 devices that defeat emissions controls and describing Defendants' online sales listings).) Further, the Government argues that after-market modified stock cars remain motor vehicles under the CAA. (Doc. 40 at 9.)

At this stage, the Government has alleged facts which, when taken as true for the present motion, plausibly give rise to violations of 42 U.S.C. §§ 7522(a)(3)(A) and (B). The complaint alleges that Defendants sold more than 250,000 defeat devices, leading to a plausible inference that these devices were sold for use in motor vehicles operated on the nation's roadways. (Doc. 1 ¶ 2.) The Government alleges that these parts were designed to defeat emission standards. (See, e.g., id. ¶ 90 ("A principal effect of each of Defendants' EGR Delete Hardware Products is, and at all relevant times herein was, to bypass, defeat, or render inoperative a motor vehicle's EGR System."); id. ¶ 108 ("A

8

principal effect of each of Defendants' Aftertreatment System Delete Hardware Products is, and at all relevant times herein was, to bypass, defeat, or render inoperative a motor vehicle's Aftertreatment System.").) Further, the Government alleges that Defendants "knew or should have known" that these parts were "being offered for sale or installed for such use or put to such use." (See, e.g., id. ¶ 109.) The Government plausibly alleges, then, that at least some of these parts were used on "motor vehicles" within the purview of the relevant statutes and that the Defendants knowingly violated the statutes.

Defendants' contention that they are selling the defeat devices to persons who are using them for stock cars or persons who may be modifying motor vehicles into stock cars for use in competition so as to no longer render them "motor vehicles" raises factual issues that cannot be resolved at this stage. At this stage, the court need not resolve whether such modified motor vehicles no longer fall within the purview of the act. For the reasons noted, the complaint's allegations, including the allegation that Defendants sell over 250,000 such parts, plausibly alleges that Defendants are selling the subject parts for use in "motor vehicles" in violation of the law even under Defendants' construction of the statute.

Accepting the Government's well-pleaded allegations as true and drawing reasonable inferences in its favor, the Government has

met its burden at this initial stage, and Defendants' motion to dismiss will be denied.

**B.  Requests for Response (Claims V-VI)**

In Claims V and VI, the Government alleges that the Defendants violated Section 203(a)(2)(A) of the CAA, 42 U.S.C. § 7522(a)(2)(A), by "fail[ing] to provide complete information required by EPA's First [and Second] Request for Information." (Doc. 1 ¶¶ 146, 156.)

A person violates Section 203(a)(2)(A) of the CAA by failing to "make reports or provide information required under section 208." In relevant part, Section 208(a) provides:

> Every <u>manufacturer</u> of new motor vehicles or new motor vehicle engines, and every <u>manufacturer</u> of new motor vehicle or engine parts or components, <u>and other persons subject to the requirements of this part</u> or part C, shall establish and maintain records, perform tests where such testing is not otherwise reasonably available under this part and part C (including fees for testing), make reports and provide information the Administrator may reasonably require to determine whether the manufacturer or other person has acted or is acting in compliance with this part and part C and regulations thereunder, or to otherwise carry out the provision of this part and part C, and shall, upon request of an officer or employee duly designated by the Administrator, permit such officer or employee at reasonable times to have access to and copy such records.

42 U.S.C. § 7542(a) (emphasis added.)  By its terms, this provision thus covers "manufacturers"[4] and "other persons subject to the

---

[4] The CAA contains two definitions of manufacturers: one for motor vehicle and engine manufacturers, and one for parts manufacturers. <u>See</u> 42 U.S.C.

10

requirements of this part or part C." "[T]his part" refers to Part A of the CAA, which houses both the above-quoted information-gathering provision and Section 203's defeat device prohibitions. Amendments to the Clean Air Act, Pub. Law. No. 101-549, 104 Stat. 2471 (1990).

Defendants principally argue that the complaint fails to plausibly allege that they are manufacturers under the statute; instead, Defendants believe the "facts show that [their] conduct allegedly in violation of the CAA involved only sales – or offers to sell – and installation of the automotive parts at issue." (Doc. 36 at 19 (citing Doc. 1 ¶¶ 61-68).) Defendants further contend that they are not "persons subject to the requirements of [Part A]." (Id. at 21.) Defendants claim that such "persons" must be "directly involved" in manufacturing and that the "requirements" of Part A do not include the "prohibitions" of the defeat device provision arguably applicable to them. (Id. at 21-22.)

The Government responds that Defendants are plausibly "other persons" subject to Part A's requirements. Pointing to the legislative text and history, the Government contends that "other

---

§ 7550(1), (9). Section 208, in turn, covers manufacturers of both motor vehicles and engines, and of parts. The Government's allegations relate to parts. The definition of "manufacturer" for parts under the CAA is "any person engaged in the manufacturing, assembling or rebuilding of any device, system, part, component or element of design which is installed in or on motor vehicles or motor vehicle engines." 42 U.S.C. § 7550(9).

11

persons" include those subject to the defeat device provisions. (Doc. 40 at 28-30.) In the Government's view, Defendants' position that it can be subject to the prohibitions of Part A, but not its requirements, creates a "distinction without a difference." (Doc. 40 at 26.) In support, the Government relies on Ced's Inc. v. U.S. EPA, 745 F.2d 1092 (7th Cir. 1984), which construed a similar CAA information-gathering provision as including "prohibitions" of the CAA within the "requirements" of the CAA. (Doc. 40 at 26 (citing Ced's, 745 F.2d at 1096).) Further, the Government argues that it has alleged that Defendants are manufacturers of vehicle and engine parts and components subject to section 208. (Doc. 40 at 28-29 (citing Doc. 1 ¶¶ 46, 53-54, 56, 59-60, 69, 78, 92, 96, 114).)

At this stage, the Government has plausibly alleged that Defendants are at least "other persons" subject to Part A's requirements. 42 U.S.C. § 7542(a). The Defendants have not demonstrated any daylight between the "requirements" of Part A and the "prohibitions" outlined in the defeat device provision. Cf. Ced's, 745 F.2d at 1096 ("Compliance with this prohibition is a requirement of the Act; therefore, Ced's is subject to a requirement of the Act.").

Whether Defendants are manufacturers or merely suppliers is a question of fact that may properly be considered at a later time. At present, the court need merely determine whether the Government

has plausibly alleged that Defendants are subject to Section 208(a) of the CAA, 42 U.S.C. § 7542(a). For the reasons noted above, the Government has met its burden at this stage, and Defendants' motion to dismiss as to Claims V and VI will therefore be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (Doc. 35) is denied.

<pre>
                                    /s/   Thomas D. Schroeder
                                    United States District Judge
</pre>

August 29, 2023